205 P.3d 1175

Dennis Lyle AKERS and Sherrie
L. Akers, husband and wife,
Plaintiffs–Respondents,

v.

Vernon J. MORTENSEN and Marti E.
Mortensen, husband and wife,
Defendants–Appellants,

and

D.L. White Construction, Inc., David
L. White and Michelle V. White,
husband and wife, Defendants.

Dennis Lyle Akers and Sherrie L. Akers,
husband and wife, Plaintiffs–
Respondents,

v.

D.L. White Construction, Inc., David L.
White and Michelle V. White, husband
and wife, Defendants–Appellants,

and

Vernon J. Mortensen and Marti
E. Mortensen, husband and
wife, Defendants.

Nos. 33587, 33694.

Supreme Court of Idaho,
Lewiston, March 2008 Term.

Jan. 22, 2009.

Rehearing Denied April 16, 2009.

Givens Pursley, LLP, Boise, for appellants Mortensen. Terri Yost argued.

Robert Covington, Hayden, for appellants White.

James Vernon & Weeks, P.A., Coeur d'Alene, for respondents. Susan Weeks argued.

**SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION DATED JUNE 4, 2008 IS HEREBY WITHDRAWN**

HORTON, Justice.

This appeal arises from a bench trial concerning an easement and trespass dispute. Vernon and Marti Mortensen, David and Michelle White, and D.L. White Construction, Inc. (hereinafter collectively referred to as "Appellants") appeal the district court's ruling regarding the existence, scope, and location of Appellants' easement across Respondents Dennis and Sherrie Akers' property and the district court's award of compensatory and punitive damages for trespass and emotional distress. This Court previously decided an appeal concerning this case in *Akers v. D.L. White Constr., Inc.*, 142 Idaho

293, 127 P.3d 196 (2005) (*Akers I*). We affirm in part and vacate in part the district court's judgment issued after *Akers I* and remand the case for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are set out in detail in *Akers I*. There are four parcels of property involved in this case: "Government Lot 2," "Parcel A," "Parcel B" and the "Reynolds Property." The four parcels are rectangular and meet together at a four-way corner. Government Lot 2 is located to the northeast, and Parcel B is to the northwest. The Akers own the southwestern corner of Government Lot 2 and the southeastern corner of Parcel B. Parcel A is located to the southwest and much of Parcel A, including that adjoining Parcel B, is owned by the Whites. The Mortensens own a portion of Parcel A located to the south of that owned by the Whites. The Reynolds Property is located to the southeast and is not owned by any of the parties to this litigation. Together, the Whites and Mortensens plan to subdivide and develop their respective properties.

Government Lot 2 is bisected roughly north to south by a county road, Millsap Loop Road. Appellants hold an easement for ingress and egress to Millsap Loop Road across portions of the Akers' property. Because the properties meet at a four-way corner, Parcel A and Government Lot 2 do not actually share a border. It is therefore physically impossible to access Parcel A from Millsap Loop Road in Government Lot 2 without also passing through some other property.

The Akers acquired their real property in 1980. At the time of acquisition, a road provided access to a Quonset hut on Parcel A, running through the southern portion of Government Lot 2 and the southeastern corner of Parcel B. The Quonset hut is located near the border of Parcel A and Parcel B. The access road was connected to Millsap Loop Road by an approach (the original approach) that turned sharply north from the access road, which runs east to west. The original approach was located on a blind curve in Millsap Loop Road. In order to obtain a building permit, the Akers were required to alter the entrance point of the access road where it connects to Millsap Loop Road, so that the entrance had a 30–foot line of sight in each direction of Millsap Loop Road. The Akers constructed a new approach (the curved approach), which starts to turn earlier and curves more gently to the north before meeting Millsap Loop Road. The Akers eventually quarreled with the Whites' predecessors in interest, the Peplinskis, over the Peplinskis' use of the access road, leading to the Peplinskis filing a lawsuit. The Peplinski/Akers suit ended in 1994 when the Peplinskis sold their property, including Parcel A, to the Mortensens. The Mortensens later sold much of Parcel A, including that portion adjoining Parcel B, to the Whites.

In January 2002, the Akers blocked Appellants' use of the curved approach to the access road and forbade Appellants from traveling on the western end of the access road where it passes through Parcel B before connecting to Appellants' property in Parcel A. Appellants then brought in heavy equipment, including a bulldozer, to carve a route around the Akers' gate and to otherwise alter the access road. This led to a series of confrontations between the Akers and Appellants, as well as alleged damage to the Akers' property and alleged malicious behavior by Appellants.

In response, the Akers filed the instant action for trespass, quiet title, and negligence. The district court bifurcated the trial proceedings. After the first phase of the trial, the district court made findings of fact and conclusions of law, concluding that Appellants had an express easement 12.2 feet in width across the Akers' property in Government Lot 2. The district court determined that the express easement began at Millsap Loop Road, ran through the original approach rather than the curved approach, and tracked the southern boundary of Government Lot 2, terminating at the western boundary of that parcel and did not enter into the Akers' property in Parcel B. The district court concluded that Appellants had failed to establish a prescriptive easement or

an implied easement arising from prior use. The district court further concluded that Appellants had trespassed and unreasonably interfered with the Akers' use of their property, with damages to be determined in the second phase of the trial.

Before the damages portion of the trial, the district court personally viewed the property in dispute in the company of counsel for the parties. After the second phase of the trial, the district court awarded the Akers compensatory damages arising from Appellants' trespass in the amount of $17,002.85, which was trebled pursuant to I.C. § 6–202 for a total of $51,008.55, to be paid by Appellants jointly and severally. Sherrie Akers was awarded $10,000 in compensatory damages for emotional distress, also to be paid jointly and severally by Appellants. Additionally, the district court entered punitive damage awards in favor of the Akers against the Mortensens in the amount of $150,000 and against the Whites in the amount of $30,000. Finally, the district court granted an award of costs and attorney fees to the Akers, to be paid jointly and severally by the Mortensens and Whites, in the amount of $105,534.06.

Appellants appealed from that judgment and the dispute came before this Court in *Akers I*. This Court remanded the case to the district court for additional fact finding and a determination regarding whether Appellants were entitled to a prescriptive easement or an easement implied from prior use. Additionally, we vacated the award of damages, costs, and attorney fees for further consideration in light of the district court's conclusions on remand regarding the scope of Appellants' easement rights.

On remand, the district court concluded that Appellants were not entitled to an implied easement from prior use because the access road was not reasonably necessary for the enjoyment of the dominant estate, Parcel A. The district court based this conclusion of law on its finding that, at the time of the severance of the dominant estate from the servient estate, there was a second road that provided access to Parcel A. The district court concluded that Appellants were entitled to a prescriptive easement across Govern-

ment Lot 2, 12.2 feet in width, which was coextensive with the scope and location of the express easement. The district court also found the prescriptive easement passed from Government Lot 2 into Parcel B and immediately turned ninety degrees to the south to provide access to Parcel A. Based on these findings of fact and conclusions of law, the district court reinstated the award of damages, costs, and attorney fees from *Akers I*, and awarded the Akers their costs and attorney fees on remand. Appellants timely appealed from the district court's order on remand.

## II. STANDARD OF REVIEW

 Review of a trial court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *Benninger v. Derifield*, 142 Idaho 486, 489, 129 P.3d 1235, 1238 (2006) (citing *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949, 812 P.2d 253, 256 (1991)). Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered. *Rowley v. Fuhrman*, 133 Idaho 105, 107, 982 P.2d 940, 942 (1999) (citing *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990)). A trial court's findings of fact will not be set aside on appeal unless the findings are clearly erroneous. *Ransom v. Topaz Mktg., L.P.*, 143 Idaho 641, 643, 152 P.3d 2, 4 (2006) (citing *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002); *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 650, 39 P.3d 588, 590 (2001); I.R.C.P 52(a)). If the findings of fact are based upon substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. *Benninger*, 142 Idaho at 489, 129 P.3d at 1238 (citing *Hunter v. Shields*, 131 Idaho 148, 151, 953 P.2d 588, 591 (1998)). This Court will not substitute its view of the facts for that of the trial court. *Ransom*, 143 Idaho at 643, 152 P.3d at 4 (citing *Bramwell*, 136 Idaho at 648, 39 P.3d at 588). The findings of the trial

court on the question of damages will not be set aside when based upon substantial and competent evidence. *Trilogy Network Sys., Inc. v. Johnson,* 144 Idaho 844, 846, 172 P.3d 1119, 1121 (2007) (citing *Idaho Falls Bonded Produce Supply Co. v. General Mills Rest. Group, Inc.,* 105 Idaho 46, 49, 665 P.2d 1056, 1059 (1983)).

## III. ANALYSIS

The parties ask that we resolve all remaining issues in the case without further remand. We are unable to fulfill their requests. We affirm the district court's decision concluding that Appellants do not hold an easement implied from prior use across the Akers' property. We also affirm the district court's finding that Appellants hold a prescriptive easement across Government Lot 2 totaling 12.2 feet in width that is coextensive with the scope and location of Appellants' express easement. However, we conclude that the district court's finding concerning the location of Appellants' prescriptive easement across Parcel B is not supported by substantial and competent evidence and we vacate this finding and remand the issue to the district court. We also vacate and remand the district court's award of damages in favor of the Akers for further determination consistent with the district court's conclusions concerning Appellants' easement rights on remand.

Appellants argue that (1) the district court's Order on Remand did not comply with I.R.C.P. 52(a); (2) the district court erred when it concluded that Appellants do not have an easement by implication across the Akers' real property; (3) the district court erred when it found that Appellants' prescriptive easement is coextensive with Appellants' expressed easement across Government Lot 2 and the prescriptive easement turns immediately to the south upon turning into Parcel B; (4) the district court erred when it awarded the Akers compensatory and punitive damages for trespass and negligent infliction of emotional distress; and (5) the district court erred when it awarded the Akers attorney fees and costs below. We address these arguments in turn.

### A. Although the district court's Order on Remand failed to comply with the requirements of I.R.C.P. 52(a), it is sufficient to permit appellate review.

Appellants argue that the district court failed to make findings of fact and conclusions of law on remand in accordance with I.R.C.P. 52(a). Rather than remanding this case, Appellants ask to resolve their claims of easement because the relevant facts and conclusions to be drawn therefrom are clear and obvious in the record.

Idaho Rule of Civil Procedure 52(a) provides in relevant part:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment.... A written memorandum decision issued by the court may constitute the findings of fact and conclusions of law only if the decision expressly so states or if it is thereafter adopted as the findings of fact and conclusions of law by order of the court.

■ The district court issued a written memorandum decision that did not expressly state that the decision constituted its findings of fact and conclusions of law. Neither did the district court adopt the memorandum decision as its findings of fact and conclusions of law by order. Accordingly, the Order on Remand did not comply with the requirements of I.R.C.P. 52(a). However, this conclusion does not end our inquiry.

■ The purpose of the underlying rule is to "afford the appellate court a clear understanding of the basis of the trial court's decision, so that it might be determined whether the trial court applied the proper law to the appropriate facts in reaching its ultimate judgment." *Pope v. Intermountain Gas Co.,* 103 Idaho 217, 225, 646 P.2d 988, 996 (1982) (citing *Perry Plumbing Co. v. Schuler,* 96 Idaho 494, 497, 531 P.2d 584, 587 (1975)). To that end, the findings required by Rule 52(a) should be clear, coherent, and complete while avoiding an unnecessary re-

view of the evidence. *Browning v. Ringel,* 134 Idaho 6, 14, 995 P.2d 351, 359 (2000).

We considered the effect of a trial court's failure to comply with the requirements of I.R.C.P. 52(a) in *Petition of Steve B.D.,* 111 Idaho 285, 723 P.2d 829 (1986). In that case, the appellant argued that a magistrate's order must be reversed because the memorandum opinion did not expressly state it constitutes findings of fact and conclusions of law. We rejected this argument, stating:

> [W]e agree with and affirm the district court who noted: "This court concludes that it is abundantly clear from a reading of the entire memorandum and order what facts the magistrate accepted and what law he acted upon." The decision of [the magistrate] permits meaningful appellate review, and while perhaps technically violative of I.R.C.P. 52(a), such does not require a remand in this case. *Accord Matter of Adoption of Baby Girl Chance,* 4 Kan. App.2d 576, 609 P.2d 232 (1980).

*Id.* at 292, 723 P.2d at 836. This conclusion is completely consistent with the admonition that the Idaho Rules of Civil Procedure "shall be liberally construed to secure the just, speedy and inexpensive determination of every action and proceeding." I.R.C.P. 1(a). Although we expect the trial courts of this state to comply with our rules of procedure, the interests identified in I.R.C.P. 1(a) would not be served if we were to rigidly interpret I.R.C.P. 52(a) as requiring that a trial court's decision must be vacated and remanded solely because of the failure to comply with the requirements of I.R.C.P. 52(a).

In the instant case, the district court's Order on Remand clearly articulates the facts the district court accepted and the law that it applied. Our instructions on remand in *Akers I* directed the district court to make additional findings and conclusions regarding the Appellants' claims of an implied easement from prior use and prescriptive easement. As to the existence of an easement implied from prior use, the district court noted that our decision in *Akers I* required the district court to determine whether, at the time of the severance of the dominant and servient estates, there was an easement across the servient estate that was reasonably necessary to the proper enjoyment of the dominant estate. The district court found that, at the time of the severance of the dominant and servient estates, a "back way" provided access to the dominant estate. Therefore, the district court found that an implied easement across the servient estate was not reasonably necessary and concluded that Appellants did not hold an easement implied by prior use across the Akers' property.

With regard to Appellants' claim of a prescriptive easement, the district court noted that our decision in *Akers I* held that Appellants were entitled to a presumption of adverse use and the relevant time period the district court was to examine on remand was from 1966 to 1980. The district court concluded that Appellants had a prescriptive easement across Government Lot 2 that was coextensive with their express easement that continued into Parcel B and turned immediately south into Appellants' property. Accordingly, we conclude that the district court's Order on Remand affords us a clear understanding of the basis of the district court's decision.

**B. The district court did not err when it found that Appellants do not have an easement by implication across the Akers' property.**

In *Akers I,* we limited the scope of the remand to one of three elements needed to establish an implied easement from prior use. 142 Idaho at 301, 127 P.3d at 204. In order to prove the existence of an implied easement by prior use, a party must show: (1) unity of title or ownership and subsequent separation by grant of the dominant estate; (2) apparent continuous use long enough before separation of the dominant estate to show that the use was intended to be permanent; and (3) that the easement must be reasonably necessary to the proper enjoyment of the dominant estate. *Id.* In *Akers I,* we held that Appellants had satisfied the first two elements of an easement implied from prior use. *Id.* at 302, 127 P.3d at 205. However we remanded the case due to the lack of findings necessary for the resolution

of the question whether in 1966, when the dominant estate was separated from the servient estate, use of the access road through Parcel B was "reasonably necessary" to the enjoyment of the dominant estate. *Id.*

■ Appellants argue that the district court erred when it found that the access road across the Akers' property was not reasonably necessary for the enjoyment of Appellants' property. Appellants argue that the district court erred when it found that a back way provided sufficient alternative access to the property in 1966, and therefore the access road across Government Lot 2 was not reasonably necessary to the enjoyment of the dominant estate.

■ " '[R]easonable necessity is something less than the great present necessity required for an easement implied by necessity.' " *Beach Lateral Water Users Ass'n v. Harrison,* 142 Idaho 600, 605, 130 P.3d 1138, 1143 (2006) (quoting *Davis v. Peacock,* 133 Idaho 637, 643, 991 P.2d 362, 368 (1999)). Because an implied easement from prior use arises at the time of severance, the issue of reasonable necessity is based upon the circumstances that existed at that time. *Akers I,* 142 Idaho at 302, 127 P.3d at 205 (citing *Davis,* 133 Idaho at 642, 991 P.2d at 367). When deciding the issue of reasonable necessity, the court should "balance the relative situations pro and con, as to the respective convenience, inconvenience, costs and all other pertinent, connected facts." *Eisenbarth v. Delp,* 70 Idaho 266, 270, 215 P.2d 812, 814 (1950) (citations omitted). Although *Eisenbarth* involved a private condemnation action under I.C. § 7–701(5), its analysis of reasonable necessity required for the private condemnation of a road is also applicable to the reasonable necessity required for an implied easement by prior use. *Thomas v. Madsen,* 142 Idaho 635, 639, 132 P.3d 392, 396 n. 3 (2006).

The district court found that Appellants "failed to prove by a preponderance of the evidence that [a] 'back way' did not exist back in 1966" that provided sufficient alternative access to the dominant estate. The district court found that, in 1966, Appellants' property was used for agricultural purposes. There is substantial evidence in the record to support the district court's conclusion that the back way existed in 1966. First, the district court relied on the testimony of Reynolds, who testified that the back way was an old road. Reynolds did not testify as to how old the road was, however, he did indicate the road was in existence at the time he was six years old. When he testified on September 9, 2002, Reynolds was 63 years old, meaning he was six years old in 1945. Reynolds's testimony indicates that the back way existed prior to the separation of the dominant and servient estates in 1966. The district court also found that the back way was depicted on a United States Geological Survey topographic map from 1901.

Appellants argue that the testimony of William A. Millsap, whose father was the Appellants' predecessor in interest, proves that the back way did not exist in 1966. During William Millsap's testimony, Appellants' counsel asked whether there was access to the property by means other than the access road running through the Akers' property. William Millsap answered: "Uh, no, *not that we ever used.*" (emphasis added). Similarly, Appellants argue the testimony of Richard Peplinski, whose father was also the Appellants' predecessor in interest, proves that the back way did not exist in 1966. Appellants' counsel asked Peplinski: "Other than this access road that was there when you purchased—when your dad purchased the property, *was there any other road you used to access the 160 acres?* " (emphasis added). Richard Peplinski answered "No."

The district court examined the testimony of both William Millsap and Richard Peplinski and found that their testimony implied that the back way existed but it was not used by either of the witnesses' fathers to access the dominant estate. We conclude that there was substantial evidence supporting the district court's finding that the back way existed at the time of the separation of the dominant and servient estates in 1966. When deciding the issue of reasonable necessity, it is the province of the trial court to balance the respective convenience, inconvenience, costs, and other pertinent facts. Appellants have not persuaded us that the trial court's conclusion should be overturned on appeal.

**C. The district court's findings of fact regarding the scope and location of the prescriptive easement are not supported by substantial and competent evidence.**

The district court found that Appellants' prescriptive easement was coextensive in scope and location with Appellants' express easement across Government Lot 2. The district court also found that the prescriptive easement turned immediately south upon entering Parcel B. Appellants argue that they hold a prescriptive easement over the entire length of the access road in Government Lot 2, including the curved approach. Appellants also argue that the prescriptive easement does not turn immediately south upon entering Parcel B and that the district court improperly limited the width of the prescriptive easement to 12.2 feet.

**1. The district court did not err when it found that the location of Appellants' prescriptive easement across the Akers' property was coextensive with the express easement in Government Lot 2.**

 Appellants argue that the curved approach is part of their prescriptive easement across Government Lot 2. The district court found that Appellants' prescriptive easement is coextensive in scope with Appellants' express easement, which does not include the curved approach. We conclude that Appellants' argument regarding the curved approach is not properly before this Court on appeal.

Our remand in *Akers I* directed the district court to determine whether a prescriptive easement across Government Lot 2 was acquired during the time between the severance of the dominant and servient estates in 1966 and when the Akers purchased the their property in 1980. The Akers did not construct the curved approach until 1982. Because the Akers constructed the curved approach after they had purchased their property, the question whether a prescriptive easement arose across the curved approach was outside the scope of the remand. Therefore, we decline to address this argument on appeal.

**2. The district court erred when it found that Appellants' prescriptive easement turned immediately south upon entering Parcel B.**

 Appellants argue that their prescriptive easement does not turn immediately south upon entering Parcel B, and instead extends further to the west around a hill before turning south onto Appellants' property. The district court found that the access road on Parcel B, prior to 1980, turned south immediately after entering Parcel B from Government Lot 2. The district court included an attached exhibit to its amended judgment that illustrated the location of Appellants' prescriptive easement on Parcel B. After the prescriptive easement crossed the boundary of Government Lot 2 into Parcel B, the exhibit indicates that the easement turns 90 degrees to the south and enters Appellants' property. However, this finding is not supported by substantial and competent evidence.

The district court stated that it relied upon a number of exhibits when it concluded that Appellants' easement turned immediately south upon entering Parcel B, including Defendants' Exhibits 42 and 44. However, these exhibits, which are aerial photographs of the relevant property, indicate that the access road historically made a more gradual turn resembling a shepherd's crook rather than a 90–degree turn. Defendant's Exhibit 41, an aerial photograph from 1978 also shows that the access road made a gradual turn through Parcel B before entering Parcel A. Perhaps most telling is Plaintiff's Exhibit 253, which is a photograph of the shared boundary between Government Lot 2, Parcel B, and Parcel A, and the Quonset hut on Parcel A. While the photograph was taken in 2003 (well after the prescriptive easement was established prior to 1980), it is nonetheless informative. The photograph depicts a large hill to the south of the access road, which the access road gradually curves around. We recognize that the uncontroverted evidence showed that the Akers permitted Peplinski to extend the access road further to the west in Parcel B after the Akers purchased the property. However, the photograph does not support a finding

that the access road previously turned 90 degrees to the south traveling straight up a steep hill in order to access Parcel A, as would be required if the access road had immediately turned 90 degrees upon entering Parcel B. In light of this photographic evidence, we conclude that there is not substantial evidence supporting the district court's conclusion as to the location of Appellants' prescriptive easement on Parcel B. This issue must be remanded to the district court for additional fact finding consistent with this opinion.

### 3. The district court did not err when it found that the scope of Appellants' prescriptive easement across the Akers' property was limited to a width of 12.2 feet.

Appellants argue that the scope of the prescriptive easement is at least 25 feet in width, including ditches and shoulders. Appellants argue that their predecessors in interest originally used the prescriptive easement for agricultural purposes and operated farming equipment in excess of 20 feet in width on the access road. The district court concluded that the scope of Appellants' prescriptive easement was 12.2 feet in width.

The district court examined a number of exhibits and personally viewed the property during the trial before concluding that the scope of the prescriptive easement was limited to a width of 12.2 feet. The district court based its finding of fact on Plaintiffs' exhibits 304 and 305. These exhibits depict a portion of the access road without ditches or shoulders on either side. The district court also considered the testimony of W.L. Millsap and Reynolds when it considered the width of Appellants' prescriptive easement. The district court found, based on its viewing of the property and the record, that the width of the traveled portion of the access road was 12.2 feet. We conclude that the district court's finding is supported by substantial and competent evidence and affirm the district court's decision.

### D. The damages award and award of attorney fees and costs must be vacated.

As we held in *Akers I*, the question of whether and to what degree Appellants'

conduct constituted trespass on the Akers' property is intertwined with the question of the scope and boundaries of Appellants' easement rights. *Akers I*, 142 Idaho at 304, 127 P.3d at 207. Because the district court must determine the location of Appellants' prescriptive easement in Parcel B on remand, we vacate the district court's award of damages below based upon trespass.

Similarly, we also vacate the district court's award of damages to Sherrie Akers for negligent infliction of emotional distress. The district court awarded Sherrie Akers $10,000 for negligent infliction of emotional distress, for which Appellants are jointly and severally liable. To support a claim for negligent infliction of emotional distress, a party must prove a breach of a recognized legal duty. *Nation v. State, Dept. of Corr.*, 144 Idaho 177, 191, 158 P.3d 953, 967 (2007). In the instant case, the district court predicated the award of damages for negligent infliction of emotional distress on Appellants' malicious behavior while trespassing on the Akers' property. As we indicated in *Akers I*, the question of damages flowing from Appellants' conduct is inseparable from consideration of Appellants' easement rights. *Akers I*, 142 Idaho at 304, 127 P.3d at 207. Without a determination of Appellants' easement rights, it is impossible to determine the scope of Appellants' trespass. Therefore, we vacate the district court's award of damages for negligent infliction of emotional distress and remand the issue for further determination after the district court determines Appellants' easement rights. For the same reason, we vacate the district court's award of punitive damages in favor of the Akers.

For the same reasons that we vacate the district court's damage awards, we vacate the district court's award of costs and attorney fees to the Akers.

### E. Costs and Attorney Fees on Appeal

Both the Akers and Appellants request an award of costs and attorney fees on appeal. In light of the mixed result in this case, we conclude that there is no prevailing party on

appeal. Therefore, we decline to award costs and attorney fees on appeal.

## IV. CONCLUSION

We affirm the district court's judgment that Appellants do not have an implied easement by prior use and that Appellants' prescriptive easement is 12.2 feet in width. We vacate the district court's judgment as to the location of the prescriptive easement in Parcel B, the award of damages, and the award of attorney fees and costs. We remand the case for further proceedings consistent with this opinion. We do not award attorney fees or costs on appeal.

Chief Justice EISMANN, Justices BURDICK, J. JONES and Justice Pro Tem TROUT concur.