## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 35949

VERNON JERRY MORTENSEN,

Plaintiff/Appellant,

v.

STEWART TITLE GUARANTY
COMPANY,

Defendant/Respondent.

Coeur d'Alene, April 2010 Term

2010 Opinion No. 77

Filed: July 1, 2010

Stephen W. Kenyon, Clerk

**SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION DATED APRIL 26, 2010 IS HEREBY WITHDRAWN.**

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

The decision of the district court is <u>affirmed</u>.

Johnson & Monteleone, LLP, Boise, for appellant. Samuel Johnson argued.

Kirkpatrick & Lockhart, Spokane, for respondent. Joseph T. Reuter argued.

---

W. JONES, Justice

### I. NATURE OF THE CASE

Vernon J. Mortensen appeals the district court's decision granting summary judgment to Stewart Title Guaranty Company in his action for breach of contract and intentional infliction of emotional distress. Mortensen claims that he is entitled to relief for Stewart Title Guaranty Company's failure to defend the appeal in his suit to secure an easement running over an access road to his property.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Vernon J. Mortensen, appellant, owns a parcel of land near Coeur d'Alene, Idaho, for which he purchased title insurance from Stewart Title Guaranty Company ("Stewart Title"), respondent. The policy insured both title and access to the property. Mortensen's parcel

1

connects to a county highway via a primitive access road that runs over properties belonging to Dennis and Sherrie Akers. When Mortensen acquired his land in 1994, part, but not all, of this access road was subject to an express easement in favor of Mortensen's estate.

In 1982, the Akerses built an improved curved driveway on their land from the county highway to the access road, shortcutting a preexisting sharp turn in the access road. They had been permitting Mortensen to access his parcel via the curved driveway and the access road, but did not want the road to be widened or improved. In November of 2001, Mortensen sent a letter to Stewart Title demanding that it act to ensure access to his property, as he was planning on selling a portion of his parcel to David L. White, a business partner, and his wife Michelle. White and Mortensen apparently sought to subdivide their parcels into a housing development and needed to widen the access road to do so. Sometime thereafter in late 2001, a Stewart Title representative contacted the Akerses and requested that they quitclaim the portion of their property not subject to the express easement so that Mortensen could access his land. The Akerses declined the request. Nonetheless, on or about January 3, 2002, White and Mortensen entered onto the Akerses' curved driveway, bulldozed a gate, and began excavating the road. Roughly a week later, the Akerses sued the Mortensens and the Whites for trespass, negligence, and to quiet title. Stewart Title provided counsel to Mortensen during the ensuing bench trial and, due to the difficulty in separating all the causes of action, defended him not just in the quiet-title claim, but on the tort claims as well. After seven total days of trial, the district court found the Whites and Mortensens jointly liable for $10,000 in compensatory damages for emotional distress and treble trespass damages of $51,000. It also found Mortensen individually liable for $150,000 in punitive damages.

This Court has twice heard appeals in the *Akers* case. *Akers v. D.L. White Constr.*, 142 Idaho 293, 127 P.3d 196 (2005) ("*Akers I*"); *Akers v. Mortensen*, 147 Idaho 39, 205 P.3d 1175 (2009) ("*Akers II*"). In the most recent ruling, this Court affirmed the trial court's finding that a prescriptive easement 12.2 feet wide permits Mortensen to reach his property over the access road, but remanded for further fact finding on the exact location of the easement and for a redetermination of damages. *Akers II*, 147 Idaho at 44, 48, 205 P.3d at 1180, 1184. The lower court's decision on remand is still pending.

During Mrs. Akers' testimony at trial, Mortensen learned for the first time that Stewart Title had requested the quitclaim deed from the Akerses without first notifying Mortensen.

2

Additionally, while the lawsuit was pending, Stewart Title conveyed to White and Mortensen a quitclaim deed from Kathryn Baker, the Akerses' predecessor in interest, for the triangular piece of land containing both the access road's entry point onto the highway and the Akerses' curved driveway. Mortensen and the Whites then apparently improved this parcel by attempting to develop the access road. However, this Court has since upheld the district court's ruling that the triangular parcel actually belongs to the Akerses. *Akers I*, 142 Idaho at 203, 127 P.3d at 300. Last, again during trial, Stewart Title represented to Mortensen that it would pursue his appeal, but after Mortensen's motion to reconsider was denied, Stewart Title opted instead to pay Mortensen the full limit of the title-insurance policy and terminate representation.

On July 2, 2007, Mortensen sued Stewart Title for fraud, breach of contract, and emotional distress, among other claims. Mortensen also raised a claim for quasi-estoppel during the hearing on Stewart Title's motion for summary judgment. The district court granted summary judgment to Stewart Title, finding that Stewart Title did not breach any of the contract terms, that there was no factual issue as to his quasi-estoppel claim, and that the emotional-distress claim was time-barred under I.C. § 5-219. The court also awarded $25,000 in attorney fees to Stewart Title. Mortensen argues on appeal that Stewart Title breached its contractual duty to act diligently and in good faith by notifying the Akerses that they might have a valid quiet-title claim against Mortensen and by incorrectly representing to him that he owned the triangular piece of land containing the access road's entry point onto the highway. Mortensen also contends that Stewart Title breached its contract by refusing to provide counsel for him on appeal in the *Akers* litigation, and that even if it did not breach its contract, it was estopped from abandoning the appeal. He last contends that his emotional-distress claim was not time-barred and that Stewart Title was not entitled to attorney fees. Stewart Title responds that it was permitted under the contract to take any reasonable actions to ensure that Mortensen could access his land and that it was also permitted to terminate his representation by paying the limit of the insurance policy.

### III. ISSUES ON APPEAL

1. Whether Stewart Title breached the insurance policy by paying the limit of the policy rather than representing Mortensen on appeal in the *Akers* litigation.

2. Whether Stewart Title could refuse to represent Mortensen on appeal in the *Akers* litigation under the doctrine of quasi-estoppel.

**3.** Whether Stewart Title was in breach for failing to act diligently when it attempted to obtain quitclaim deeds for portions of the access road.

**4.** Whether the district court correctly granted summary judgment to Stewart Title on Mortensen's claim for emotional distress.

**5.** Whether the district court properly awarded attorney fees to Stewart Title.

**6.** Whether Stewart Title is entitled to attorney fees on appeal.

## IV. STANDARD OF REVIEW

When reviewing a grant of summary judgment, this Court applies the same standard of review used by the district court in ruling on the motion. *Vreeken v. Lockwood Eng'g*, 148 Idaho 89, ---, 218 P.3d 1150, 1162 (2009). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The movant carries the burden of showing that no genuine issues of material fact exist. *Losee v. Idaho Co.*, 148 Idaho 219, ---, 220 P.3d 575, 578 (2009). "[A]ll allegations of fact in the record, and all reasonable inferences from the record are construed in the light most favorable to the party opposing the motion." *Hei v. Holzer*, 139 Idaho 81, 85, 73 P.3d 94, 98 (2003). However, when the moving party provides evidentiary support for its motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of that party's pleadings." I.R.C.P. 56(e).

## V. ANALYSIS

### A. Stewart Title Properly Exercised Its Contractual Right to Pay the Policy Limit Instead of Defending Mortensen's Appeal

Mortensen alleges that Stewart Title was contractually obligated to defend his *Akers* appeal and that Stewart Title also breached the contract by failing to deliver actual access to his property.

First, Stewart Title did not breach its contract by failing to provide a usable route to Mortensen's land. An insured is entitled to recover only "up to the amount of insurance coverage under the policy." *Anderson v. Title Ins. Co.*, 103 Idaho 875, 878, 655 P.2d 82, 85 (1982). There was doubt as to whether Mortensen had legal access to his land at the time Stewart Title withdrew representation. There is no dispute, however, that Stewart Title tendered a check for $200,000 to Mortensen, representing the full value of the policy. At that point,

4

Stewart Title had fulfilled its duties as insurer, regardless of whether Mortensen actually acquired access to his property.

Second, the plain text of the insurance policy also permitted Stewart Title to pay the limit of the policy instead of pursuing Mortensen's appeal. Insurance policies are a contract between the insurer and the insured. *Hall v. Farmers Alliance Mut. Ins. Co.*, 145 Idaho 313, 318, 179 P.3d 276, 280 (2008). "If the policy at issue does not appear ambiguous on its face, and if neither party asserts that it contains an ambiguity, then this Court exercises free review over its interpretation," and applies the plain meaning of the words used. *Idaho Counties Risk Mgmt. Prog. Underwriters v. Northland Ins. Cos.*, 147 Idaho 84, 86, 205 P.3d 1220, 1222 (2009). The generally accepted rule is that express terms in the policy can specifically enable the insurer to abandon an appeal. *E.g. Sanchez v. Kirby*, 40 P.3d 1009, 1011–12 (N.M. Ct. App. 2001); *Schneider v. Commonwealth Land Title Ins. Co.*, 844 N.Y.S.2d 657, 661 (N.Y. Sup. Ct. 2007); *Truck Ins. Exch. of Farmers Ins. Group v. Century Indem. Co.*, 887 P.2d 455, 459 (Wash. Ct. App. 1995); *see also Smith v. Zale Indem. Co.*, 538 So. 2d 1142, 1144 (1989) (holding that express language in the policy permitted the insurer to avoid paying costs on appeal). Since ambiguous language is construed in favor of the insured, "the burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage." *Arreguin v. Farmers Ins. Co.*, 145 Idaho 459, 461, 180 P.3d 498, 500 (2008) (quotation omitted). The issue therefore is whether Stewart Title used language clearly reserving the right to abandon the appeal in favor of paying Mortensen the benefits under the insurance policy.

The policy language regarding Stewart Title's duty to defend is not ambiguous, nor do the parties claim it is. Section 4(c) of the policy permits Stewart Title to decide whether it will appeal an unfavorable court decision. It provides in relevant part:

> Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

Section 6 empowers Stewart Title to terminate its obligations, including the duty to defend, if it pays the policy limit to the insured:

> In case of a claim under this policy, the Company shall have the following additional options:
> . . . .

> To pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay.
>
> Upon the exercise by the Company of this option, all liability and obligations to the insured under this policy, other than to make the payment required, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

Under the plain language in the insurance policy, Stewart Title had the contractual ability to abandon Mortensen's appeal and to instead tender full payment of the policy to Mortensen. Stewart Title therefore did not breach the insurance policy by opting to pay the policy limit.

**B.      Mortensen Failed to Plead a Quasi-Estoppel Claim for Stewart Title's Decision to Abandon the Appeal**

Mortensen argues that Stewart Title was estopped from abandoning his appeal in the *Akers* litigation because it represented during the trial that it would provide his counsel on appeal and because it also allegedly never provided Mortensen with a copy of his policy. To prevail on a quasi-estoppel theory, the claimant must show:

> (1) the offending party took a different position than his or her original position, and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.

*Terrazas v. Blaine County*, 147 Idaho 193, 200 n.3, 207 P.3d 169, 176 n.3 (2009).

The district court may only consider on summary judgment claims that were properly raised in the pleadings. *Gardner v. Evans*, 110 Idaho 925, 939, 719 P.2d 1185, 1199 (1986). "A complaint need only contain a concise statement of the facts constituting the cause of action and a demand for relief." *Clark v. Olsen*, 110 Idaho 323, 325, 715 P.2d 993, 995 (1986) (citing I.R.C.P. 8(a)(1)). The key to a valid pleading is that it must put the opposing party on notice of the claims against it. *Youngblood v. Higbee*, 145 Idaho 665, 668, 182 P.3d 1199, 1202 (2008). This Court has previously held that a complaint can still state a cause of action if the prayer for relief and alleged facts could put the defendant on notice of the claim and the defendant responds to the claim in its answer. *Seiniger Law Office, P.A. v. N. Pac. Ins. Co.*, 145 Idaho 241, 247, 178 P.3d 606, 612 (2008) (discussing *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 427–28, 95 P.3d 34, 45–46 (2004)). Thus, even if a complaint does not specifically state a given cause of

action, it can satisfy the pleading requirement so long as the factual allegations themselves could fairly put the opposing party on notice of the claim against it. *See Gillespie v. Mountain Park Estates, L.L.C.*, 138 Idaho 27, 30, 56 P.3d 1277, 1280 (2002) (stating that specific factual assertions put the defendant on notice of a promissory-estoppel claim).

This claim was improperly pled. Here, no quasi-estoppel claim appears in the body of the complaint or the prayer for relief. The complaint does state that Stewart Title had represented to Mortensen it would pursue his appeal but then abandoned the litigation. However, there is no allegation that this change in position prejudiced Mortensen, was unconscionable, or that the second element of the quasi-estoppel test was otherwise met. These alleged facts were also apparently part of Mortensen's breach of contract claim, making it less likely that Stewart Title would also construe them as part of a quasi-estoppel claim. Indeed, Stewart Title apparently was not on notice of a quasi-estoppel claim because it nowhere addresses any estoppel argument in its memorandum in support of its motion for summary judgment. *Cf. Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 427–28, 95 P.3d 34, 45–46 (2004) (stating that the plaintiff had satisfied the pleading requirements because the defendant responded to the claim in its answer). The pleadings therefore did not properly raise a quasi-estoppel claim.

Despite the fact that Mortensen waived his quasi-estoppel claim, the district court addressed the cause of action on the merits both in its ruling on summary judgment and in its memorandum opinion on Mortensen's motion for reconsideration. Mortensen contends that his quasi-estoppel claim is now properly before the Idaho Supreme Court because the district court reached this issue in its rulings below.

This Court has already expressly rejected the notion that an unpleaded claim can be preserved for appeal merely because the district court addressed the claim's merits. Pleading is necessary to put the opposing party on notice of the claims it is facing and thereby "insure that a just result is accomplished." *Seiniger Law Office*, 145 Idaho at 246–47, 178 P.3d at 611–12. An unpleaded cause of action simply cannot be considered, whether on summary judgment or on appeal. *Estes v. Barry*, 132 Idaho 82, 86, 967 P.2d 284, 288 (1998). For example, in *Beco v. City of Idaho Falls*, 124 Idaho 859, 865 P.2d 950 (1993), this Court refused to consider the appellant's unpleaded breach-of-contract claim despite the fact that the district court ruled on the claim's merits. *Id.* at 865, 967 P.2d at 956. Mortensen therefore waived his quasi-estoppel claim regardless of whether the district court below reached the merits.

**C.     There Is No Genuine Issue of Material Fact to Support Mortensen's Claim that Stewart Title Failed to Act Diligently Under the Terms of the Contract**

Mortensen argues that Stewart Title breached a term in his title-insurance policy requiring it to act diligently when it attempted unsuccessfully to obtain quitclaim deeds to different parts of the access road.  Stewart Title responds that this "diligence" claim was not properly pleaded in the claim for breach of contract in the Complaint.

*1.     The Breach of Contract Claim for Lack of Diligence Was Properly Pled*

Although inartful, Mortensen's complaint alleged facts sufficient to put Stewart Title on notice of a contractual claim for failing to handle his claim diligently.  Count 3 of the complaint is for breach of contract but only states that Stewart Title "failed to fully defend Mortensen" in the *Akers* appeal and other postjudgment proceedings.  This count does not state a specific factual theory regarding breach of the covenant of diligence or good faith, but "[n]otice pleading frees the parties from pleading particular issues or theories, and allows parties to get through the courthouse door merely by stating claims upon which relief can be granted."[1]  *Cook v. Skyline Corp.* 135 Idaho 26, 33, 13 P.3d 857, 864 (2000).  In the body of factual allegations, the complaint states that Stewart Title had secretly offered to purchase the land underlying the access road, provoking the Akerses to file their lawsuit against Mortensen.  The complaint also alleges that Stewart Title obtained the triangular parcel containing the access-road entrance onto the highway and that Mortensen incurred expenses when he improved this parcel incorrectly believing he owned it.  Stewart Title subsequently signaled that it understood the claim to allege a breach of the covenant of good faith, arguing in the memorandum supporting its summary-judgment motion that there could be no contractual cause of action for bad faith because Stewart Title had paid the limits on the insurance policy.[2]  Mortensen has therefore satisfied the pleading requirements for his bad-faith claim.

---

[1] Count 4 of the complaint is entitled "Bad Faith," and it alleges that Stewart Title "failed to perform the terms of the insurance contract in good faith."  Of course, a claim for bad faith sounds in tort, not contract.  *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 97–98, 730 P.2d 1014, 1017–18 (1986). It was apparently unclear to Stewart Title whether Mortensen's claim for lack of diligence was meant to sound in tort or in contract, but Stewart Title accounted for both theories.  It also addressed both possibilities in its brief on appeal.  Stewart Title was therefore on notice of this possible breach-of-contract theory.

[2] The record on appeal does not show that Stewart Title ever filed an answer.  This is likely because Mortensen initially filed his lawsuit *pro se* against Stewart Title Company of Coeur D'Alene, Inc., a different entity from the Stewart Title Guaranty Company that actually issued Mortensen's title-insurance policy and is now properly defending this suit.  Although Mortensen refused at first to substitute the correct party, he relented and named Stewart Title as the defendant after he had obtained counsel and Stewart Title of Coeur D'Alene had filed an answer.

8

*2.      There Exists No Genuine Issue of Material Fact Supporting the Claim for Bad Faith Breach of Contract for Lack of Diligence*

Mortensen first contends that Stewart Title breached its contractual duty to act diligently and in good faith when it notified the Akerses that Mortensen lacked an express easement to use the whole access road that leads to his property, allegedly causing the Akerses to file their lawsuit. He claims that Stewart Title acted in bad faith when it did not inform him that it would pass this information along to the Akerses. Mortsensen also claims that Stewart Title failed to act diligently by obtaining a quitclaim deed from Kathryn Baker to the access road's entry point onto the highway and misrepresenting that the quitclaim deed conveyed true ownership, inducing Mortensen to expend resources improving the property.

Of course, Stewart Title had a duty to act in good faith when attempting to settle with a third party. An implied duty of good faith and fair dealing exists between insurers and insureds in every insurance policy. *Simper v. Farm Bureau Mut. Ins. Co.*, 132 Idaho 471, 474, 974 P.2d 1100, 1103 (1999).

The insurance policy itself also required Stewart Title to proceed "diligently" when acting to protect Mortensen's interests, but an insurance company can act diligently and in good faith but still be unsuccessful in its efforts to settle a dispute with a third party. The relevant portion of the policy reads:

> The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise it [sic] rights under this paragraph, it shall do so diligently.

The policy language permits Stewart Title to do whatever it deems necessary to protect Mortensen's easement provided it acts diligently. Acting diligently does not require infallibility. "Diligence" is defined as "[c]are; caution; the attention and care required from a person in a given situation." *Black's Law Dictionary* 488 (7th ed. 1999). "Diligent" is similarly defined as "[c]areful; attentive; persistent in doing something." *Id.* at 489.

Stewart Title acted with acceptable diligence when it requested a quitclaim deed from the Akerses for the portion of the access road not subject to an express easement in favor of Mortensen's estate. On November 7, 2001, Mortensen sent a letter to Stewart Title stating that

he was "quite certain" the Akerses would stop him from using the access road if they had "a legitimate reason to stop [him]."[3] The letter threatened Stewart Title with legal action if it did not quickly ensure an easement to Mortensen's property. In response, a representative of Stewart Title contacted Mrs. Akers by telephone to request a quitclaim deed, but Mrs. Akers rejected the offer. Although it might have been advantageous for Stewart Title to inform Mortensen that it intended to contact the Akerses about the easement, it had no obligation to do so under the contract, which permitted Stewart Title to take any actions it deemed necessary. There is no reason to believe that contacting the Akerses to seek an amicable settlement was an inappropriate response to Mortensen's demand that Stewart Title obtain access to his land.

In any event, there is no genuine fact issue to support Mortensen's contention that Stewart Title caused the Akerses to file their lawsuit against Mortensen in the first place. When Mortensen purchased his land, he was aware that his predecessors in interest, Floyd and Stella Peplinski, were already involved in litigation against the Akerses over whether the access road was subject to an easement in favor of Mortensen's current property. Nonetheless, Mortensen and his business partner, White, entered onto the Akerses' curved driveway on January 3, 2002, without permission. They dumped dirt and gravel, damaged a gate, and began excavating the road in order to widen it to feed the subdivision they had planned on their parcels.[4] This forcible trespass is what actually triggered the lawsuit. The Akerses' original complaint alleged that Mortensen began excavating the access road after they had warned him not to trespass on the portions not subject to an express easement. The complaint then stated causes of action not only for quiet title, but also for trespass and negligence. Thus, there is no factual issue as to whether Stewart Title failed to proceed diligently and, even if there were, Mortensen can show no damage thereby.

Last, there is no evidence showing that Stewart Title ever represented that it had conveyed true ownership to Mortensen of the triangular parcel containing the Akerses' curved driveway and access road entrance to the highway. During the *Akers* trial, Stewart Title conveyed to Mortensen a quitclaim deed, not a warranty deed, that it obtained from Baker, a prior owner. Mortensen admitted during the lawsuit he was aware that his ability to use and

---

[3] The letter was addressed to North Idaho Title, a company in the Coeur d'Alene area that actually issued the Stewart Title policy.

[4] This excavating work was actually in violation of Kootenai County ordinances governing housing developments. The work ended when a county building inspector arrived and issued a stop-work order.

improve that parcel was disputed. Any expenses he incurred improving that land were not due to Stewart Title's lack of diligence. Accordingly, the district court correctly granted summary judgment to Stewart Title on Mortensen's claim for breach of Stewart Title's contractual duties to act diligently and in good faith.

**D.** **There Is No Genuine Issue of Material Fact to Support the Claim for Emotional Distress**

Mortensen asserts a cause of action for intentional infliction of emotional distress for the anguish he allegedly suffered as a result of Stewart Title's refusal to provide legal counsel for his appeal in the *Akers* litigation. The district court granted summary judgment to Stewart Title on this claim, finding that it was time-barred by I.C. § 5-219(4) because Mortensen did not file suit until three years after discovering that Stewart Title would not defend his appeal. The parties disagree over whether Mortensen has alleged a continuing tort that would toll the statute of limitations until the *Akers* litigation is complete. However, since there is no issue of material fact in support of Mortensen's claim, this Court does not need to decide whether the failure to pursue an appeal is a continuing tort sufficient to toll § 5-219(4).

Although the district court did not reach the merits of Mortensen's cause of action for emotional distress, this court may nonetheless affirm its order granting summary judgment to Stewart Title on the grounds that Mortensen cannot show any genuine issue of material fact in favor of his claim. "This [C]ourt must uphold the finding and judgment of the trial court if it is capable of being upheld on any theory." *Fischer v. Fischer*, 92 Idaho 379, 382, 443 P.2d 463, 466 (1968).

To prevail on a claim for intentional infliction of emotional distress: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Evans v. Twin Falls County*, 118 Idaho 210, 220, 796 P.2d 87, 97 (1990).

Merely exercising a legal right does not satisfy the outrageousness element of an emotional-distress claim. To be actionable, the conduct must be so extreme as to "arouse an average member of the community to resentment against the defendant," and "must be more than unreasonable, unkind, or unfair." 86 C.J.S. *Torts* § 74 (2009) (citations omitted). This Court has held that a claim for intentional infliction of emotional distress could result from a bad-faith denial of insurance coverage. *Walston v. Monu. Life Ins. Co.*, 129 Idaho 211, 219–20, 923 P.2d

11

456, 464–65 (1996). However, "[t]he actor is never liable . . . where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Restatement (Second) of Torts § 46 cmt. g (1965); *see also Edmondson v. Shearer Lumber Prods.*, 139 Idaho 172, 180, 75 P.3d 733, 741 (2003) (finding no outrageous conduct where an employer was exercising a legal right to terminate an employee). "Courts generally agree that merely exercising a legal right cannot itself constitute a tort, but that the defendant may nevertheless engage in extreme and outrageous behavior in the context of exercising a legal right." Restatement (Third) of Torts § 45 cmt. d (Tentative Draft No. 5, 2007).

There is no genuine issue of fact that Stewart Title's conduct was not outrageous or offensive. As explained in Part V.A above, Stewart Title had the legal right to pay Mortensen the limit of his insurance policy instead of pursuing further litigation, which it did. Stewart Title sent a letter to Mortensen along with a check for $200,000 notifying him that it was abandoning his appeal and did nothing more. Mortensen does not allege, nor do there appear to be, any accompanying circumstances that could amount to extreme and outrageous conduct. As a matter of law Stewart Title simply exercised a legal right and is not liable for causing emotional distress.

### E.    The Award of Attorney Fees Below Is Affirmed

Idaho Code §§ 41-1839 and 12-123 are the exclusive remedies for obtaining attorney fees in disputes arising out of insurance policies. I.C. § 41-1839(4). The district court awarded $25,000 in attorney fees to Stewart Title pursuant to § 41-1839(4), which permits such an award in suits over insurance policies when the court finds "that a case was brought, pursued or defended frivolously, unreasonably or without foundation." Although § 41-1839 does not clarify what cases would be unreasonable or frivolous, this Court has many times addressed I.C. § 12-121, a similar provision that permits fee awards in frivolous or meritless cases. Under I.C. § 12-121, "[i]f there is a legitimate, triable issue of fact or a legitimate issue of law, attorney fees may not be awarded." *Kiebert v. Goss*, 144 Idaho 225, 228, 159 P.3d 862, 865 (2007). "[W]hether a statute awarding attorney's fees applies to a given set of facts is a question of law" subject to free review. *Ransom v. Topaz Mktg.*, 143 Idaho 641, 644, 152 P.3d 2, 5 (2006).

The district court's award was proper because Mortensen never raised any triable issues of fact. Mortensen raised an emotional-distress claim and a claim for breach of contract for

Stewart Title's refusal to defend his appeal in the face of unambiguous contract language permitting Stewart Title to pay the limit on his policy instead of pursuing his appeal. Mortensen also did not attempt to offer any factual evidence to support his claims that Stewart Title acted without diligence or in bad faith when it sought to obtain for him an ownership interest in the access road, even though he demanded that Stewart Title do something to ensure he had an easement there. The award for attorney fees below pursuant to I.C. § 41-1839(4) is therefore affirmed.

**F.      Stewart Title Is Entitled to Attorney Fees on Appeal**

This Court initially denied Stewart Title's request for attorney fees on appeal because, rather than providing separate authority and argument in its request, Stewart Title only referred to another portion of its brief discussing attorney fees in the district court. Stewart Title filed a petition for rehearing, asking this Court to revisit its ruling.

Idaho follows the "American Rule" of attorney fees, which requires a party requesting attorney fees on appeal to cite either statutory or contractual authority in support. *PHH Mortgage Servs. Corp. v. Perreira*, 146 Idaho 631, 641, 200 P.3d 1180, 1190 (2009). "We have repeatedly held that simply requesting an award of attorney fees pursuant to Idaho Appellate Rule 41, without citing any statutory or contractual basis for the award, is insufficient to raise the issue of attorney fees on appeal." *Athay v. Stacey*, 142 Idaho 360, 371, 128 P.3d 897, 908 (2005). Like notice-pleading rules, however, the reason for this requirement is not strictly technical, but is "to allow the responding party a due process opportunity to challenge such claims." *Curr v. Curr*, 124 Idaho 686, 694, 864 P.2d 132, 140 (1993) (interpreting I.A.R. 35(a)(5)); *see also Fournier v. Fournier*, 125 Idaho 789, 791, 874 P.2d 600, 602 (Ct. App. 1994) ("Without such a limitation, a party may be subject to an award against it while being given no opportunity to raise relevant facts or to argue applicable legal principles."). "Accordingly, a request for attorney fees should alert the other party to the basis upon which attorney fees are requested in order that the other party may have a sufficient opportunity to object." *Bingham v. Montane Res. Assocs.*, 133 Idaho 420, 424, 987 P.2d 1035, 1039 (1999); *see also Beco Constr. Co. v. J-U-B Eng'rs, Inc.*, 145 Idaho 719, 726, 184 P.3d 844, 851 (2008) (holding that the other party must have "adequate notice of [the] claim in order to defend against it").

Stewart Title requested attorney fees on appeal in its brief, but only cited to I.A.R. 35 and 41. It did, however, ask for fees "for the reasons set forth" in a different subsection of the brief

13

dealing with the attorney fees awarded by the district court. In this separate subsection, Stewart Title relied on I.C. § 41-1839(4) in arguing that the district court's attorney-fee award below should be affirmed. Although Stewart Title has engaged here in a discouraged practice, upon reconsideration this Court finds that Stewart Title reasonably put Mortensen on notice that it was requesting fees under I.C. § 41-1839(4). The better method, of course, is always to cite specific statutory provisions and to spell out pertinent arguments when requesting attorney fees on appeal, or, at a minimum, to expressly incorporate both authority and argument from other portions of a brief regarding attorney fees. Nonetheless, here it was sufficient that Stewart Title provided a clear and express internal reference to another portion of its brief containing authority and argument on attorney fees. Additionally, each party submitted briefing regarding this issue with respect to Stewart Title's petition for rehearing.

As stated above, I.C. § 41-1839(4) authorizes an award of attorney fees if an appeal is brought frivolously. Again, Mortensen is merely asking this Court to second-guess the district court's ruling despite unambiguous controlling language in the insurance policy. After reviewing the briefing on the petition for rehearing, the Court awards attorney fees on appeal in this substitute opinion. *See Elec. Wholesale Supply Co. v. Nielson*, 136 Idaho 814, 828, 41 P.3d 242, 256 (2001) (awarding fees where the appellant "failed to present a meaningful issue on a question of law"). Therefore, no rehearing is necessary. Stewart Title's petition for rehearing is denied.

## VI. CONCLUSION

The district court's grant of summary judgment and its award of attorney fees in favor of Stewart Title is affirmed because Mortensen raises no genuine issues of material fact in support of any of his causes of action. Although Stewart Title's petition for rehearing is denied, its request for attorney fees on appeal is granted. Costs to Stewart Title.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON **CONCUR.**

14