# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39182

DENNIS LYLE AKERS and SHERRIE L. AKERS, husband and wife, )
)
)
   Plaintiffs-Respondents, )
)
v. )
)
MARTI MORTENSEN, )
)
   Defendant-Appellant, )
)
and )
)
VERNON J. MORTENSEN; D.L. WHITE )
CONSTRUCTION, INC.; DAVID L. WHITE )
and MICHELLE V. WHITE, husband and )
wife, )
)
   Defendants. )

Moscow, September 2013 Term

2014 Opinion No. 4

Filed: February 7, 2014

Stephen Kenyon, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

The district court's judgment locating Appellants' prescriptive easement and its award of punitive damages against the Mortensens is <u>affirmed</u>. The district court's award of attorney fees to the Akers under I.C. § 6-202 is <u>vacated</u> and the case is <u>remanded</u> for apportionment of fees.

Deissner Law Office, Spokane, Washington, for appellant. Dustin D. Deissner argued.

James, Vernon & Weeks, P.A., Coeur d'Alene, for respondents. Susan P. Weeks argued.

_____

HORTON, Justice.

This appeal arises from a bench trial concerning an easement and trespass dispute. Marti Mortensen appeals from the district court's judgment regarding the scope and location of the Mortensen's easement across Dennis and Sherrie Akers' property. Ms. Mortensen also appeals from the district court's award of punitive damages and argues that she should not be liable for

the punitive damages assessed against her former husband, Vernon Mortensen. Ms. Mortensen also appeals from the district court's award of attorney fees, arguing that the court erred by failing to apportion attorney fees awarded under I.C. § 6-202.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal is a companion case to another appeal before this Court this term, *Akers v. White*, docket No. 39493; as such, the facts and procedure overlap substantially. This is the third time this case has appeared before this Court. Following a bench trial, this Court heard the first appeal in 2005 and issued *Akers v. D.L. White Const., Inc.*, 142 Idaho 293, 127 P.3d 196 (2005) (*Akers I*). After remanding the case to the district court in *Akers I*, it again appeared before this Court in 2008 and in *Akers v. Mortensen*, 147 Idaho 39, 205 P.3d 1175 (2009) (*Akers II*), we remanded the matter for additional fact finding.

In *Akers I* and *II*, defendants David and Michelle White, D.L. White Construction, Inc., and Vernon and Marti Mortensen all joined together in their appeals from the district court. However, in this appeal, Ms. Mortensen separately appeals from the district court's judgment following proceedings on the second remand. Nonetheless, this opinion refers to the Whites, D.L. White Construction, Inc., and the Mortensens collectively as "Appellants."

The facts of this case are set out in detail in *Akers I* and supplemented by *Akers II*. However, the essential facts necessary to resolve the issues before the Court in this third appeal are as follows. There are three parcels of real property involved in this case: (1) Government Lot 2; (2) Parcel A; and, (3) Parcel B, which all come together at a four-way corner, the section 19/24 corner.

> Government Lot 2 is located to the northeast, and Parcel B is to the northwest. The Akers own the southwestern corner of Government Lot 2 and the southeastern corner of Parcel B. Parcel A is located to the southwest and much of Parcel A, including that adjoining Parcel B, is owned by the Whites. The Mortensens own a portion of Parcel A located to the south of that owned by the Whites. The Reynolds Property[1] is located to the southeast … Government Lot 2 is bisected roughly north to south by a county road, Millsap Loop Road. [The Mortensens] hold an easement for ingress and egress to Millsap Loop Road across portions of the Akers' property. Because the properties meet at a four-way corner, Parcel A and Government Lot 2 do not actually share a border. It is therefore physically impossible to access Parcel A from Millsap Loop Road in Government Lot 2 without also passing through some other property.

---

1 The Reynolds property is not at issue in this case nor are its owners a party; it has simply been used as a geographical reference throughout the course of this litigation.

*Akers II*, 147 Idaho at 42, 205 P.3d at 1178. The "other property" is the southwest corner of Parcel B, owned by the Akers. It is the route of passage through Parcel B where the Mortensens have a prescriptive easement that is the subject of this third appeal.

At one time, all of the real property at issue in this case was owned by W.L. Millsap. Around 1966, and possibly much earlier, an access road matching the general contours of the easement at issue in this case ran from Millsap Loop Road, westward across the southern part of Government Lot 2. The road then went beyond the western boundary of Government Lot 2 into Parcel B, and then turned south into Parcel A. The Millsaps sold Parcel A to the Peplinskis in 1967. The deed expressly conveyed with Parcel A an easement across Government Lot 2. During the Peplinskis' ownership of Parcel A, they used the access road in the same manner as the Millsaps had used it.

The Akers purchased their property in 1980 and their deed provides that they took the land subject to "easements of record or in view." *Akers I*, 142 Idaho at 297, 127 P.3d at 200.

> After the Akers moved onto their property, they altered the route of the access road at its eastern end where it connects to Millsap Loop Road. Rather than meeting Millsap Loop Road after a sharp turn to the north as before, (the original approach) the altered approach (the curved approach) starts to turn earlier and curves more gently to the north before meeting the county road. Both the original and curved approaches to the access road are on a triangle of land (the triangle) the ownership of which has been disputed ….[T]he Peplinskis[2] sold their property, Parcel A, to the Mortensens. The Mortensens later sold much of Parcel A, including the portion adjacent to Parcel B, to the Whites.

> According to later findings by the district court, the Whites and the Mortensens entered into a business relationship in which they planned to split their land in Parcel A into smaller lots to create a housing development. The court found that in order to accommodate their projected housing development, the Appellants also planned to widen the access road that crossed the Akers' property and connected the Appellants' land to Millsap Loop Road.

> In January 2002 or before, the Akers blocked the Appellants' use of the curved approach to the access road and also forbid the Appellants to travel on the western end of the access road, where it passes through Parcel B before connecting to the Appellants' property in Parcel A. The Appellants then brought in heavy equipment, including a bulldozer, to carve a route around the Akers' gate and to otherwise alter the access road. This led to a series of confrontations between the Akers and the Appellants, as well as alleged damage to the Akers'

---

[2] The Peplinskis made minor changes to the access road with the permission of the Akers in approximately 1993. *See infra* p. 20.

3

property and alleged malicious behavior by the Appellants. In response, the Akers filed [suit] for trespass, quiet title, and negligence.

*Akers I*, 142 Idaho at 297–98, 127 P.3d at 200–01.

Following a bench trial, the district court quieted title in favor of the Akers to the triangle area and granted Appellants an easement 12.2 feet in width through Government Lot 2. This included an easement across the disputed triangle through the original approach rather than the curved approach to Millsap Loop Road. However, the district court determined the easement ended at the western boundary of Government Lot 2 and did not cross the section line into Parcel B. As a result, the easement was ruled to run from Millsap Loop Road to a point very close to, but not actually reaching, the Appellants' property in Parcel A via Parcel B.

> The district court also awarded the Akers damages arising from the Appellants' trespass in the amount of $17,002.85, which was trebled pursuant to I.C. § 6-202 to a total of $51,008.55, to be paid by the Appellants jointly and severally. Sherrie Akers was awarded $10,000 in compensatory damages for emotional distress, also to be paid jointly and severally by the Appellants. Additionally, the Akers were awarded punitive damages in the amount of $150,000 to be paid by the Mortensens, and $30,000 to be paid by the Whites. Finally, the Appellants were determined to be jointly and severally liable to the Akers for costs and attorney fees totaling $105,534.06.

*Id.* at 298, 127 P.3d at 201.

In *Akers I*, this Court affirmed the district court's decision to quiet title to the triangle in favor of the Akers and also affirmed the district court's conclusion that the Whites have an express easement by reservation, 12.2 feet in width, through the southern portion of Government Lot 2, including through the triangle. However, the matter was remanded for additional fact finding to determine if the Whites had a prescriptive easement through parcel B.

On first remand, the district court concluded that the Whites had a prescriptive easement 12.2 feet wide through Parcel B. When it determined the location of the easement, the district court found that the prescriptive easement turned immediately south at a ninety degree angle upon crossing section line 24 and entering Parcel B. The district court's decision regarding the scope and location of the prescriptive easement was appealed.

In *Akers II*, this Court found that the district court's conclusion that the road immediately turned ninety degrees after crossing section line 24 was not supported by substantial and competent evidence. As a result, we remanded the case for additional fact finding in order to precisely determine the route of Appellants' prescriptive easement through Parcel B.

4

Accordingly, we vacated the district court's judgment as to the location of the prescriptive easement, the award of damages, and the award of attorney fees and costs. However, we affirmed the district court's conclusion that the width of the prescriptive easement was 12.2 feet.

In 2002, when this case was initiated, the Mortensens were married. However, in 2006 their marriage was dissolved. After their divorce, Ms. Mortensen began to file certain motions and briefs with the district court separately from her former husband. On March 30, 2010, Ms. Mortensen filed a Motion for Partial Summary Judgment Re: Punitive Damages in which she argued that she could not be liable for punitive damages awarded due to the conduct of her former husband. Ms. Mortensen filed an affidavit in support of her summary judgment motion that stated: (1) her marriage to Mr. Mortensen was dissolved in 2006; (2) at the time Mr. Mortensen was working on the Akers' property she had no personal involvement in those activities; and, (3) she never did anything to approve, ratify, or authorize any of Mr. Mortensen's conduct on the Akers' property.

On April 14, 2010, the Akers moved to strike Ms. Mortensen's motion for partial summary judgment and her affidavit. The Akers argued that Ms. Mortensen's liability, either personally or out of the share of the community property awarded to her in the divorce, was not an issue authorized by this Court on remand from *Akers II*. The district court issued its Memorandum Decision and Order Granting Plaintiffs' Motion to Strike Defendant Marti Mortensen's Motion for Summary Judgment on May 3, 2010. The district court's opinion reflected its view that the motion was premature and that it would be willing to address Ms. Mortensen's position at a later point, but only if it awarded punitive damages:

> This Court feels its discretion is best used in granting plaintiffs' Motion to Strike.
> This is not to say that *after* the Court's decision on the location of the easement, and *after* determination of punitive damages, if any, Marti Mortensen cannot renew her motion for summary judgment or make some other dispositive motion to have this Court consider her argument that she should not be liable for punitive damages, if awarded. It is only fair to allow Marti Mortensen [to] be heard on this legal argument, albeit at a later time.
> This makes best use of the Court's resources. If there are no punitive damages awarded on remand, [then] Marti Mortensen's motion for summary judgment need not be heard.
> This decision is also fair to Marti Mortensen, as she is given her opportunity to defend against punitive damages from a factual standpoint (in the first instance during the issues to be decided on remand), and, if need be, if punitive damages are awarded, she has opportunity at a later point in time to defend against punitive damages from a legal standpoint.

5

On September 29, 2010, the district court issued its Memorandum Decision, Findings of Fact, Conclusions of Law and Order Re: Easement Location. The district court indicated that the purpose of the second remand was to determine the location of the prescriptive easement across Parcel B as it existed between 1966 and 1980. The district court noted that easement width was not an issue on remand because this Court in *Akers II* concluded that the width of the prescriptive easement was 12.2 feet. The district court ultimately held that the location of the easement across the Akers' Parcel B was properly illustrated by a survey map prepared by Scott Rasor[3] and offered by the Akers. Following the district court's conclusion that the Rasor map represented the precise location of the prescriptive easement, the court initiated the damages phase of the second remand and issued an order on March 18, 2011, that reinstated all damage awards originally assessed against the Mortensens.

Despite the district court's invitation to revisit her claim that she should not be liable for punitive damages, Ms. Mortensen did not renew her motion for summary judgment. On August 10, 2011, the district court entered judgment. The court ordered: (1) compensatory damages of $17,002.85 for trespass, trebled to $51,008.55 pursuant to I.C. § 6-202; (2) compensatory damages of $10,000 to Sherri Akers for negligent infliction of emotional distress; (3) punitive damages against Vernon Mortensen and Marti Mortensen, husband and wife, in the amount of $150,000; (4) punitive damages against the Whites in the amount of $30,000; and, (5) attorney fees in the amount of $105,534.06. The district court held all defendants jointly and severally liable for the Akers' damages awards, with the exception of the punitive damage awards, because it found that Appellants were acting in concert under I.C. § 6-803 by pursuing a common plan resulting in the commission of an intentional tortious act.

Ms. Mortensen timely appealed.

## II. STANDARD OF REVIEW

Review of a trial court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered. A trial court's findings of fact will not be set aside on appeal unless the findings are clearly erroneous. If the findings of fact are based upon substantial

---

[3] Scott Rasor is a professional land surveyor with 23 years of professional experience in Idaho, Washington, and Montana. Rasor was hired by the Akers to survey the relevant land in this litigation.

evidence, even if the evidence is conflicting, they will not be overturned on appeal. This Court will not substitute its view of the facts for that of the trial court. The findings of the trial court on the question of damages will not be set aside when based upon substantial and competent evidence.

*Akers II*, 147 Idaho at 43–44, 205 P.3d at 1179–80 (citations omitted). Additionally, "[t]his Court freely reviews the interpretation of a statute and its application to the facts." *St. Luke's Reg'l Med. Ctr., Ltd. v. Bd. of Comm'rs of Ada Cnty.*, 146 Idaho 753, 755, 203 P.3d 683, 685 (2009). Lastly, "[w]e conduct a de novo review of the constitutionality of the amount of a punitive damages award." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 338, 233 P.3d 1221, 1260 (2010).

### III. ANALYSIS

**A. We decline to address Ms. Mortensen's argument that the district court erred in locating the Akers' prescriptive easement because she failed to offer any argument or authority on the issue.**

Ms. Mortensen's opening appellate brief sets forth no original argument as to why or how the district court erred in locating Appellants' prescriptive easement across Parcel B. Instead, Ms. Mortensen attempted to adopt the arguments presented by her fellow appellants, Vernon Mortensen and the Whites, on the issue of easement location. However, Ms. Mortensen's attempt fails.

Ms. Mortensen's attempt to adopt the arguments of her former husband fails because the brief submitted by Vernon Mortensen in this appeal was struck by this Court for failure to comply with the requirements of I.A.R. 35. His appeal was dismissed.

Ms. Mortensen's attempt to adopt the Whites' arguments regarding the location of the easement fails because the Akers were not given an opportunity to respond to those arguments in Ms. Mortensen's appeal. Ms. Mortensen filed her opening brief on appeal on June 12, 2012. The Akers' responsive brief was filed on August 2, 2012. In their Respondents' brief, the Akers correctly noted that they had not received a brief from the Whites.[4] Therefore, as to this appeal, Ms. Mortensen was attempting to adopt arguments that did not yet exist and the Akers were expected to respond to arguments of which they had no notice.

---

[4] In Docket No. 39493, this Court issued an order conditionally dismissing the Whites' appeal on July 14, 2012, due to their failure to file a brief, despite it having been due on June 4, 2012. The conditional order of dismissal required the Whites' brief to be filed by July 30, 2012. The Whites' brief was lodged with the Court on August 2, 2012, and due to its untimeliness, it was not filed until August 6, 2012.

Under I.A.R. 35(a)(6), an appellant is required to identify legal issues and provide authorities supporting those arguments in their opening brief. *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004) ("In order to be considered by this Court, the appellant is required to identify legal issues and provide authorities supporting the arguments in the opening brief."). Accordingly, "[a] reviewing court looks to the initial brief on appeal for the issues presented on appeal." *Id*. This Court and the rules governing appeals that we have adopted require appellants to present all of their arguments and authorities in their opening brief because those are the only "arguments and authorities to which the respondent has an opportunity to respond in the respondent's brief." *Marcia T. Turner, L.L.C. v. City of Twin Falls*, 144 Idaho 203, 211, 159 P.3d 840, 848 (2007) (quoting *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005)).

In this case, Ms. Mortensen's opening appellate brief contains no legal issues, authorities, or argument whatsoever regarding the district court's location of the prescriptive easement across Parcel B. Accordingly, we will not address the district court's location of Appellants' prescriptive easement in this appeal.[5]

## B. The district court did not err in reinstating the punitive damage award against the Mortensens.

On March 18, 2011, the district court entered its order regarding damages on second remand and reinstated its previous award of punitive damages. On August 10, 2011, the district court entered judgment against the Mortensens, ordering that "[the Akers] are awarded punitive damages against Defendants Vernon J. Mortensen and Marti E. Mortensen, husband and wife, in the amount of $150,000." The district court awarded the punitive damages because: (1) Mr. Mortensen misrepresented facts to the Kootenai County Prosecutor by making false claims in an effort to persuade the prosecutor to prosecute Mr. Akers; (2) Mr. Mortensen threatened, intimidated, and attempted to incite Mr. Akers while on the Akers' real property by physically approaching Mr. Akers in a threatening manner and cursing at him; (3) Mr. Mortensen intentionally "rammed" the Akers' pickup truck with a bulldozer; (4) Mr. Mortensen intentionally drove through the Akers' fence and bulldozed their gate; (5) Mr. Mortensen threatened a witness, Bill Reynolds, in an attempt to influence his testimony; (6) Mr. Mortensen disregarded the Kootenai County Sheriff's verbal request that he not contact the Akers; (7) Mr.

---

[5] We observe that Ms. Mortensen's failure to effectively adopt the Whites' arguments regarding the location of the easement has little practical effect. We rejected those arguments in our companion decision in Docket No. 39493.

Mortensen has a practice of buying land with limited/disputed access for low prices, subdividing it, and selling the lots to unsuspecting purchasers, which inevitably leads to litigation; (8) Mr. Mortensen has a practice of subdividing land without the proper permits and without conducting necessary surveys, harming potential purchasers; (9) Mr. Mortensen attempted to conceal evidence of his income and assets; and (10) Mr. Mortensen had violated Kootenai County ordinances and the orders of the district court for pecuniary gain, specifically to increase the value of his land development projects.

On appeal, Ms. Mortensen asserts that the district court erred in assessing a punitive damage award against the Mortensens because the amount of the award exceeds the limits suggested by this Court in *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). Additionally, Ms. Mortensen argues that the award goes beyond deterrence and is meant merely to punish the Mortensens. However, Ms. Mortensen offers no explanation as to why or how the award is excessive and meant merely to punish.

In response, the Akers contend that the district court properly assessed punitive damages against the Mortensens and that the amount was warranted for the purpose of deterring the Mortensens from engaging in similar conduct in the future. The Akers' primary argument is that Ms. Mortensen has not supported her argument with facts or legal authority as to why the amount was excessive. Alternately, the Akers argue that the punitive damages awarded against the Mortensens in this case were warranted because a compensatory award alone would not be sufficient to prevent the Mortensens from engaging in similar conduct in the future.

Under *Weinstein*:

> "Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996). Deterrence refers to deterring the defendant and others within the state from engaging in similar wrongful conduct in the future.

149 Idaho at 333, 233 P.3d at 1255. Additionally, when this Court reviews a punitive damage award:

> [W]e consider three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded … and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418, (2003).

*Id*. at 338, 233 P.3d at 1260. "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id*. (quoting *BMW of North America*, 517 U.S. at 575). When addressing the degree of reprehensibility, the Supreme Court has instructed courts to consider whether:

> [T]he harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id. (quoting Campbell*, 538 U.S. at 419). "The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." *Id*. at 339, 233 P.3d at 1261. (citing *BMW of North America*, 517 U.S. at 580). The Supreme Court has been "reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *Campbell*, 538 U.S. at 424. However, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* at 425. The third indicium is the difference between punitive damages awarded and the penalties authorized or imposed in similar cases. *Weinstein*, 149 Idaho at 340, 233 P.3d at 1262.

Considering these guideposts, we find no error in the district court's award of punitive damages. First, the Mortensens' conduct was reprehensible. The harm caused by Mr. Mortensen was primarily economic; however, he physically threatened and attempted to incite Mr. Akers to violence. He also intentionally struck and damaged the Akers' pickup with a bulldozer. Further, Mr. Mortensen's repeated intentional trespasses and tactics were intended to intimidate the Akers and had the effect of inflicting severe emotional distress on Mrs. Akers that resulted in manifest physical symptoms.[6] This repeated intentional misconduct by Mr. Mortensen evinced an indifference to the health and safety of the Akers. Mr. Mortensen's practice of repeatedly purchasing land with questionable access and dividing it for his own pecuniary gain at the expense of vulnerable purchasers was similarly reprehensible. Second, the ratio of damages in this case does not trigger any constitutional concerns because the punitive damages do not exceed the compensatory damages award by more than a single digit ratio. The third guidepost

---

[6] The district court expressly found that Defendants' conduct resulted in physical manifestations of emotional distress in Sherrie Akers, including anxiety, stomachaches, migraines, and sleeplessness.

10

does not aid this Court in this case because no similar case with a substantial punitive damage award has been presented to the Court for comparison purposes in this appeal.

**C. This Court will not address the merits of Ms. Mortensen's argument that a divorced spouse is not liable for the punitive damages of her former spouse because the issue was not preserved for appeal.**

As previously noted in our factual and procedural history of this case, the district court struck Ms. Mortensen's motion for partial summary judgment regarding her liability because the motion was premature. Despite the district court's clear invitation to do so, Ms. Mortensen did not renew that motion in the five months following the district court's order reinstating the previous award of punitive damages against the Mortensens and before entry of judgment.[7]

On appeal, Ms. Mortensen argues that this Court should rule, as a matter of law, that punitive damages may not be collected from a divorced spouse's share of the community property. Ms. Mortensen acknowledges that generally the community is liable for one spouse's intentional torts. However, she argues that the general rule of community liability should not be extended to punitive damages and that an ex-spouse, not responsible for the conduct giving rise to the award of punitive damages, should be able to avoid liability.

We hold that Ms. Mortensen failed to preserve this issue for appeal. "This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error." *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 154 Idaho 269, 278, 297 P.3d 232, 241 (2013) (quoting *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 368, 179 P.3d 323, 331 (2008)).

In this case, the record does not contain an adverse ruling from the district court regarding whether a divorced spouse may avoid a punitive damage award previously assessed against the community due to the conduct of the former spouse. The only ruling made by the district court on second remand regarding Ms. Mortensen's argument was that it was premature. The merits of the issue were not reached below even though the court clearly invited Ms. Mortensen to present her arguments at an appropriate point in the litigation. Therefore, we will not address the merits of Ms. Mortensen's claim that, as a former spouse, she is not liable for punitive damages assessed against the community due to her ex-husband's conduct.

**D. Attorney fees awarded pursuant to I.C. § 6-202 must be apportioned.**

---

[7] The only filing made by Ms. Mortensen after the district court struck her motion for partial summary judgment was her memorandum regarding damages. This memorandum did not address her claim that she should not be liable for the punitive damages, if any, assessed against the Mortensens based on the conduct of her former husband.

The district court awarded the Akers $105,534.06 in attorney fees pursuant to I.C. § 6-202 and reinstated the award on second remand. The court concluded that an award of attorney fees was warranted under I.C. § 6-202 because the Akers were the prevailing party, they properly posted the access road, and Appellants' trespasses were willful and intentional. In addition to the reinstatement of $105,534.06 for prior attorney fees, the district court also imposed $22,000 in fees related to the second remand.

Citing to *Bumgarner v. Bumgarner*, 124 Idaho 629, 862 P.2d 321 (Ct. App. 1993), Ms. Mortensen argues that the Akers may only be granted attorney fees under I.C. § 6-202 for those fees specifically incurred in prosecuting the intentional trespass outlined in the statute. Consequently, Ms. Mortensen contends that the district court erred in failing to apportion the Akers' award of attorney fees. We agree.

A trial court is authorized to award attorney fees only as provided by statute or contract. I.R.C.P. 54(e)(1). Under I.C. § 6-202, where a defendant willfully and intentionally trespasses on properly posted real property, that defendant is liable to the property owner "for treble the amount of damages … plus a reasonable attorney's fee which shall be taxed as costs, in any civil action brought to enforce the terms of this act if the plaintiff prevails." The plain language of I.C. § 6-202 "mandates the award of a reasonable attorney fee to a plaintiff who prevails in an action brought under the statute." *Bubak v. Evans*, 117 Idaho 510, 513, 788 P.2d 1333, 1336 (Ct. App. 1989). Therefore, under I.C. § 6-202, a prevailing plaintiff may only be awarded attorney fees "reasonably incurred in prosecuting the trespass action upon which he prevailed." *Bumgarner*, 124 Idaho at 644, 862 P.2d at 336.

Because I.C. § 6-202 only provides an award of attorney fees for those fees incurred in prosecuting the trespass under the statute, the district court erred in failing to apportion its award of attorney fees to the Akers granted under I.C. § 6-202. Accordingly, we vacate the district court's judgment as it relates to the award of attorney fees to the Akers and remand this matter back to the district court for apportionment of fees.

**E. We decline to address Ms. Mortensen's argument that Judge Mitchell should have recused himself because no argument or authority on the issue has been offered.**

On appeal, Ms. Mortensen states, "MARTI MORTENSEN respectfully echoes the argument of other Appellants that Judge Mitchell should have recused himself." This is the entirety of her argument that the district judge erred by failing to disqualify himself. Unfortunately for Ms. Mortensen, and surely to the great surprise to her lawyer, Vernon

Mortensen's appeal was dismissed and the Whites' subsequent brief did not advance an argument that Judge Mitchell should have recused himself on second remand.[8]

"This Court will not consider an argument not supported by cogent argument or authority." *City of Meridian v. Petra Inc.*, 154 Idaho 425, 450, 299 P.3d 232, 257 (2013) (citing *Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010)). Accordingly, we will not further address this claim of error.

## IV. CONCLUSION

We affirm the district court's location of Appellants' prescriptive easement and its award of punitive damages against the Mortensens. We vacate the district court's judgment to the extent that it awarded attorney fees to the Akers because the district court failed to apportion the fee award. Accordingly, we remand this matter back to the district court for the sole purpose of apportionment of attorney fees. Costs to the Akers.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES, **CONCUR**.

---

[8] For the reasons set forth in Part III(A) of this opinion, we would not have considered any arguments advanced by the Whites' later brief.