# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44887

WILLIAM R. FISCHER and M. ANN
FISCHER, Trustees of the William and Ann
Fischer Revocable Trust,

    Plaintiffs-Respondents,

v.

JAMES F. CROSTON and MARJORIE C.
CROSTON, husband and wife, and ALL
UNKNOWN OWNERS AND/OR OTHER
PERSONS OR ENTITIES CLAIMING ANY
INTEREST IN THE FOLLOWING
DESCRIBED REAL PROPERTY, (see file
for property description),

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2018 Term

2018 Opinion No. 15

Filed: March 2, 2018

Karel A. Lehrman, Clerk

_____

Appeal from the District Court of the Seventh Judicial District, State of Idaho,
Bonneville County.  Hon. Joel E Tingey, District Judge.

The judgment of the district court is <u>affirmed</u>.

Dunn Law Offices, Rigby, for appellants.  Robin D. Dunn argued.

Holden, Kidwell, Hahn & Crapo, PLLC, Idaho Falls, for respondents.  W. Forrest
Fischer argued.

_____

BURDICK, Chief Justice.

This appeal involves a boundary dispute arising out of Bonneville County. James and
Marjorie Croston (Crostons) appeal the district court's grant of summary judgment in favor of
William R. Fischer and M. Ann Fischer, trustees of the William and Ann Fischer Revocable
Trust (Fischers). The Crostons own property adjacent to the southern side of property owned by
the Fischers. For several decades, an existing post-and-wire fence divided the two properties.
The existing fence fell into disrepair, and in 2015, the Fischers sought to remove the existing
fence and replace it with a new fence. The Fischers had a survey done to ensure the new fence

would be correctly placed; however, the survey revealed that the location of the old fence line did not reflect the platted property line. Instead, the old fence line extended south of the platted line approximately three feet on the eastern side and approximately nine feet on the western side. Following the survey, the Crostons built a new fence on the survey line, which prompted the Fischers' filing of the present complaint. Both parties claim they are the owners of the tract of land between the old fence line and the platted boundary line. The district court granted the Fischers' motion for summary judgment reasoning that the old fence constituted a boundary by agreement, and there was no agreement to change the boundary line. The Crostons timely appeal that ruling, and we affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute as to the boundary line separating the adjacent Croston and Fischer properties, and whether an existing fence line or a new survey is determinative of the boundary line between the properties. The Fischers acquired their property in 1992 and transferred it into a trust in November 2001. The Crostons own the adjacent property on the southern side of the Fischer property, with the northern boundary of the Crostons' property forming the southern boundary of the Fischers' property. The Crostons acquired their property in 1959. At the time the Crostons purchased their property there was an existing post-and-wire fence running along the Fischer property's southern boundary line, dividing the Fischer property from the Croston property. Evidence indicated the fence had been in place since at least 1951.

In 2015, the existing fence was in a state of disrepair, and the Fischers decided to replace it with a new fence in August 2015.  In September 2015, during the process of replacing the old fence, the Crostons sent the Fischers a letter stating that the Fischers had engaged in trespass and malicious injury to property, and that if the Fischers did not "restore [Crostons] property to [their] satisfaction" the Fischers would be prosecuted under various statutes. The Fischers then had a survey conducted, and claim the purpose of the survey was to locate the exact line of the old fence so a new fence could be accurately placed on the old fence line without any disputes. Both parties believed the survey would show that the old fence line was the same as the platted boundary line between the properties.

Prior to the survey being conducted, Mrs. Fischer spoke with the Crostons' son, Jim Croston (Jim), about the Fischers' intention to have a survey done so that there would be no dispute about where the fence should be placed. Jim was outside measuring and marking where

2

the old fence line had been, when Mrs. Fischer came out of her house and asked Jim what he was doing, and Jim responded that he was "determining where the fence line used to be." Mrs. Fischer replied, "[w]e will be replacing the fence with a much better fence. We are going to get a survey to find out where the line is at. We are using the same surveyors as the City uses so [there] shouldn't be any disputes." Jim replied, "[o]kay." The Crostons claim this conversation between their son and Mrs. Fischer constitutes a binding agreement that the results of the survey would control where the boundary and new fence dividing the properties was to be placed.

The survey was completed and revealed that the old fence line was south of the platted property line. The old fence line extended three feet south of the platted property line on the east side of the property, and nine feet south of the platted property line on the west side of the property. The tract of land between the platted boundary line and the old fence line is called Tract 1, and is the parcel of property at issue in this case, with both parties claiming ownership of Tract 1. The Fischers notified the Crostons of the survey results, and asked the Crostons not to install a fence until the dispute was resolved. The Fischers then placed "no trespassing" signs along the old fence line. The Crostons went past the no trespassing signs and built a new fence on the platted boundary line based on the survey results. The Fischers then filed a complaint seeking a declaration that the old fence line is the true boundary line under the doctrine of boundary line by agreement. The Fischers also sought treble damages and attorney fees based on the Crostons' trespass and Idaho Code section 12-121.

The district court granted the Fischers' motion for summary judgment and dismissed the Crostons' counter-claim. The district court reasoned that there was no genuine dispute that the old fence that divided the property line for over 60 years constituted a boundary by agreement. The district court also found there was no agreement or contract to adopt a new boundary line. The district court stated that such an agreement needed to be made between the actual owners of the adjacent properties, and there was no evidence such an agreement was reached in this case. The district court went on to say the comments made by Mrs. Fischer to the Crostons' son, Jim, regarding her obtaining of a survey to determine the property line did not give rise to an enforceable agreement to change the property line. Finally, the district court reasoned, there was no consideration to support any alleged agreement because the Crostons did not give up anything of value in exchange for the alleged decision of the Fischers to move the fence north and give the Crostons more property. Accordingly, the district court held that the old fence line was

3

determinative of the property line and thus the Fischers were the owners of Tract 1. The district court also concluded the Crostons trespassed when they crossed the old fence line and installed a new fence. Following the entry of summary judgment, the district court declined to award attorney fees under Idaho Code section 12-121, but awarded fees to the Fischers limited to the trespass action under Section 6-202. The Crostons timely appealed.

## II.     ISSUES ON APPEAL

1. Whether there was a valid, binding agreement to change the boundary line based on the survey results.

2. Whether the Crostons trespassed onto the Fischers' property when the Crostons entered Tract 1 and constructed a fence thereon.

3. Whether the district court properly awarded attorney fees under Section 6-202 and whether either party is entitled to attorney fees on appeal.

## III.     STANDARD OF REVIEW

"When reviewing a grant of summary judgment, this Court employs the same standard as the district court." *Idaho Youth Ranch, Inc. v. Ada Cnty. Bd. of Equalization*, 157 Idaho 180, 182, 335 P.3d 25, 27 (2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Fuller v. Callister*, 150 Idaho 848, 851, 252 P.3d 1266, 1269 (2011) (quoting *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010)). "However, the nonmoving party cannot rely on mere speculation, and a scintilla of evidence is insufficient to create a genuine issue of material fact." *Intermountain Real Props., LLC v. Draw, LLC*, 155 Idaho 313, 316–17, 311 P.3d 734, 737–38 (2013) (quoting *Bollinger v. Fall River Rural Elec. Co–op., Inc.*, 152 Idaho 632, 637, 272 P.3d 1263, 1268 (2012)).

## IV.     ANALYSIS

**A.      There was no binding agreement or contract to change the existing boundary line.**

Neither party disputes that the old fence line constituted a boundary by agreement, and as such was reflective of the true property line until it was torn down and a new survey conducted. The Crostons contend that upon the old fence being torn down and a survey conducted, an agreement was formed to place the new fence on the survey line. The Fischers contend no such agreement existed and the new fence should be placed on the same line as the old fence. The

4

district court granted summary judgment in favor of the Fischers, concluding the boundary by agreement evidenced by the old fence was determinative of the property line, and no binding agreement existed to change the boundary line. For the reasons discussed below, the district court's order granting summary judgment is affirmed.

As an initial matter, because both parties agree that the old fence line constituted a boundary by agreement, the issue is whether there was an enforceable agreement between the parties to change where the boundary would be located based on the survey results. It is undisputed that there was no written agreement or contract between the parties. Rather, the Crostons rely on a verbal exchange that took place between Mrs. Fischer and the Crostons' son Jim to support their argument that an agreement was in place. The Crostons allege that Jim was out marking where the old fence line had been when Mrs. Fischer came out and asked Jim what he was doing, to which Jim responded that he was "determining where the fence line used to be." Mrs. Fischer replied, "[w]e will be replacing the fence with a much better fence. We are going to get a survey to find out where the line is at. We are using the same surveyors as the City uses so shouldn't be any disputes." Jim replied, "[o]kay." The Crostons contend this exchange formed a binding agreement to place the new fence line on the survey line. For the reasons below, there was no enforceable agreement between the parties.[1]

First, an oral agreement purporting to establish a new boundary line and thus transfer land would violate the statute of frauds. "An agreement to convey real estate is generally invalid under the statute of frauds unless it is committed to writing." *Goodman v. Lothrop*, 143 Idaho 622, 627, 151 P.3d 818, 823 (2007); I.C. §§ 9–505(4), 55–601. Idaho Code section 9-505 provides,

> In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:
> . . .
> An agreement for . . . the sale, of real property, or of an interest therein, and such agreement, if made by an agent of the party sought to be charged, is

---

[1] The Crostons also argue Exhibit D of the affidavit of their daughter Linda Penning demonstrates there was an enforceable agreement between the parties. However, the Crostons do not appeal the district court's striking of Exhibit D, and thus cannot rely on it on appeal. *See Foster v. Traul*, 145 Idaho 24, 30 n. 2, 175 P.3d 186, 192 n. 2 (2007) (determining that when a party does not appeal a district court's striking of an affidavit, those portions of the affidavit stricken at the district court remain stricken on appeal).

invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged.

I.C. § 9-505(4). "Failure to comply with the statute of frauds renders an oral agreement unenforceable both in an action at law for damages and in a suit in equity for specific performance." *Hoffman v. S V Co., Inc.*, 102 Idaho 187, 190, 628 P.2d 218, 221 (1981).

There is an exception to this general rule if the agreement at issue qualifies as a boundary by agreement. *Goodman*, 143 Idaho at 627, 151 P.3d at 823. This exception is permitted because such an agreement does not constitute an oral conveyance of land. *Id.* The two requirements for a boundary by agreement are: an uncertain or disputed boundary, and an express or implied agreement as to the new boundary. *Id.* at 628, 151 P.3d at 824. This Court has stated,

> "Where the location of a true boundary line between coterminous owners is *known* to either of the parties, or *is not uncertain,* and *is not in dispute*, an oral agreement between them purporting to establish another line as the boundary between their properties constitutes an attempt to convey real property in violation of the statute of frauds . . . and is invalid."

*Berg v. Fairman*, 107 Idaho 441, 444, 690 P.2d 896, 899 (1984) (emphasis added) (quoting *Gameson v. Remer*, 96 Idaho 789, 791, 537 P.2d 631, 633 (1975)). Thus, "[w]hile Idaho cases do recognize the doctrine of boundary by agreement, an orally agreed upon boundary cannot constitute the actual boundary between two pieces of property unless the true boundary line is 'unknown to the parties and is uncertain or in dispute.' " *Berg*, 107 Idaho at 444, 690 P.2d at 899 (quoting *Hyde v. Lawson*, 94 Idaho 886, 889, 499 P.2d 1242, 1245 (1972)). As we have said,

> the doctrine of an agreed boundary line and its binding effects upon the coterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line. When that uncertainty exists, or is believed by them to exist, they may amongst themselves by agreement fix the boundary line, and that agreement will bind all the consenting parties.

*Downing v. Boehringer*, 82 Idaho 52, 57, 349 P.2d 306, 308 (1960) (quoting *Clapp v. Churchill*, 130 P. 1061, 1062 (1913)).

Here, the Crostons argue that their son Jim's conversation with Mrs. Fischer formed a binding agreement that a new boundary line would be placed on the line of the survey results. However, this argument fails under the statute of frauds, because even if an agreement was reached, it would need to be in writing to be enforceable. It is undisputed that the old fence, which had been in place since at least 1951, was reflective of the true property line. At the time of the conversation between Jim and Mrs. Fischer, the survey revealing the boundary

6

discrepancy between the old fence and the platted line had not yet been conducted. It is undisputed that neither party had knowledge that the platted boundary line differed from the old fence line until after the survey. Thus, at the time of Jim and Mrs. Fischer's conversation, the true boundary line was not "unknown to the parties[,] uncertain or in dispute" because the parties believed the true boundary line was consistent with the post-and-wire fence line. *Berg*, 107 Idaho at 444, 690 P.2d at 899. Absent such a dispute, the Crostons cannot satisfy the first element of a boundary by agreement. Because there was not a dispute as to the boundary line, there could not be a valid boundary by agreement as to a new line. Accordingly, any oral agreement purporting to move the undisputed boundary line would violate the statute of frauds, and be unenforceable. *Id.*

Moreover, an agreement changing the boundary line must be between the actual owners of the adjacent properties. "[I]f the location of the true boundary is unknown to either of the parties, and is uncertain or in dispute, such *coterminous owners* may agree upon a boundary line." *Sims v. Daker*, 154 Idaho 975, 978, 303 P.3d 1231, 1234 (2013) (emphasis added) (quoting *Luce v. Marble*, 142 Idaho 264, 271, 127 P.3d 167, 174 (2005)). This Court's case law interpreting boundaries by agreement have continually held that it is "coterminous owners" who have the power to enter into a boundary by agreement. *See Flying Elk Inv., LLC V. Cornwall*, 149 Idaho 9, 13, 232 P.3d 330, 334 (2010); *Marble*, 142 Idaho at 271, 127 P.3d at 174; *Downing*, 82 Idaho at 56, 349 P.2d at 308.

Here, the Crostons concede that they—the coterminous owners of the adjacent property—could not have entered into an agreement with the Fischers regarding a new fence line and boundary. Instead, the Crostons contend, "there can be no mistake that the children of the Crostons were acting as agents for their parents and had direct communication with the Fischers." The direct communication the Crostons contend formed the alleged agreement to move the boundary line was between Jim and Mrs. Fischer. Thus, the Crostons argue that Jim was acting as their agent and his communication with Mrs. Fischer created a binding agreement on both parties. This argument is unavailing.

As noted, we have continually held that a boundary by agreement may be formed between "coterminous owners." *See Flying Elk*, 149 Idaho at 13, 232 P.3d at 334; *Marble*, 142 Idaho at 271, 127 P.3d at 174; *Downing*, 82 Idaho at 56, 349 P.2d at 308. While this Court has not explicitly extended this authority to an agent of a coterminous owner, we embraced such an

7

idea in *Duff v. Seubert*, where an agent's agreement with a coterminous owner was sufficient for a boundary by agreement. 110 Idaho 865, 867, 719 P.2d 1125, 1127 (1985). Nevertheless, for the reasons explained below, Jim was neither a coterminous owner nor an agent of a coterminous owner, and he thus lacked the authority to enter into any binding agreement or contract on behalf of the Crostons.

"There are three separate types of agency, any of which are sufficient to bind the principal to a contract entered into by an agent with a third party[.]" *Bailey v. Ness*, 109 Idaho 495, 497, 708 P.2d 900, 902 (1985). "The three types of agencies are: express authority, implied authority, and apparent authority." *Id.* A principal creates agency when he,

> (1) [E]xpressly grants the agent authority to conduct certain actions on his or her behalf; (2) impliedly grants the agent authority to conduct certain actions which are necessary to complete those actions that were expressly authorized; or (3) apparently grants the agent authority to act through conduct towards a third party indicating that express or implied authority has been granted.

*Forbush v. Sagecrest Multi Family Prop. Owners' Ass'n, Inc.*, 162 Idaho 317, __, 396 P.3d 1199, 1212 (2017) (quoting *Humphries v. Becker*, 159 Idaho 728, 735, 366 P.3d 1088, 1095 (2016)).

> "This Court has previously viewed the question of whether an agency relationship exists as a question of fact for the jury to determine." But, to be clear, "[w]hether facts sufficient to constitute an agency relationship exist is indeed a question of fact for the jury, however, whether a given set of facts are sufficient to constitute an agency relationship is a question of law appropriate for this Court's consideration."

*Forbush*, 162 Idaho at ___, 396 P.3d at 1212 (citations omitted).

Here, as an initial matter, it is undisputed that Jim was not a coterminous owner of the Croston property, as the Croston parents are the owners of the property. Moreover, the Crostons' daughter, Ms. Penning, is their designated agent and holds power of attorney. The record repeatedly indicates Ms. Penning is "the agent" of the Crostons. Thus, Jim neither owned the property nor did he hold his parents' power of attorney.

Moreover, Jim was not an agent of his parents as he did not have express, implied, or apparent authority to enter into agreements or contracts on behalf of his parents. As to express authority, there is no evidence in the record the Croston parents expressly authorized Jim to act on their behalf. In fact, they designated their daughter Ms. Penning as their agent and power of attorney. It was Ms. Penning, not Jim, who was authorized to act on their parents' behalf. In addition to there being no express authority, there was also nothing in the record indicating any

8

implied authority "to conduct certain actions which are necessary to complete those actions that were expressly authorized[.]" *Id.* Lastly, as to apparent authority, there is again no evidence in the record that the Crostons "apparently grant[ed] [Jim] authority to act through conduct towards a third party indicating that express or implied authority has been granted." *Id.* At no time did the Crostons or Jim represent that he was authorized to act on behalf of his parents. Because Jim was not an agent of his parents, he lacked any authority to act on his parents' behalf and enter into a binding agreement with the Fischers regarding the boundary between his parents' property and the Fischer property. *See Bailey*, 109 Idaho at 497, 708 P.2d at 902 (explaining the three types of agency sufficient for an agent to bind a principal to a contract).

The Crostons next argue that Ms. Penning, the Crostons' agent, was present when Jim spoke to Mrs. Fischer. However, Ms. Penning did not speak to Mrs. Fischer, or accept any agreement on behalf of her parents. Instead, the evidence shows only that she was "present" during the conversation between her brother, Jim, and Mrs. Fischer. Her presence alone is not enough to convey agency to her brother Jim. As stated in the Restatement, "[a]gency creates a personal relationship between principal and agent; an agent's delegation of power to another person to act on behalf of the principal is inconsistent with the undertaking made when a person consents to act as agent on behalf of a principal." Restatement (Third) Of Agency § 3.15 (2006). The Restatement goes on to say, "[h]owever, a principal may empower an agent to appoint another agent to act on the principal's behalf." *Id.* Here, Ms. Penning would need actual or apparent authority to appoint Jim as a subagent or coagent, and there is no evidence in the record Ms. Penning had such authority. *See* Restatement (Third) of Agency § 3.15(b) (2006). Accordingly, Ms. Penning was unable to appoint Jim as a subagent or coagent. Thus, Ms. Penning's presence when Jim spoke to Mrs. Fischer about the boundary line is insufficient to delegate Jim agency to act on his parents' behalf in forming agreements.

While the existence of agency is a question of fact, "whether a given set of facts are sufficient to constitute an agency relationship is a question of law appropriate for this Court's consideration." *Forbush*, 162 Idaho at ___, 396 P.3d at 1212 (citations omitted). Here, the record is completely devoid of any facts or evidence showing Jim was his parents' agent. There is no evidence his parents' granted him any authority to act on their behalf. Instead, the Crostons appointed their daughter, Ms. Penning, as their agent and power of attorney. As discussed above, Ms. Penning's presence was insufficient to convey agency authority to Jim when she was present

9

while he spoke to Mrs. Fischer. Thus, Jim was unable to enter any sort of binding agreement on the Crostons' behalf. Accordingly, there was no binding agreement between the Crostons and the Fischers to move the boundary line.

The Crostons next contend that their construction of a new fence and payment for the materials was consideration, and evidence of, a contract between the parties. This argument is unavailing. As analyzed above, Jim was not an agent of his parents and thus could not form binding contracts on their behalf. Additionally, Mrs. Fischer's statement to Jim lacks specificity, and is not sufficiently definite to give rise to an enforceable contract. As we have stated, a contract must be "sufficiently definite and certain in its terms and requirements" in order to be enforceable. *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 155 Idaho 55, 63, 305 P.3d 499, 507 (2013). As the district court correctly stated, "the comments made by Fischer are not sufficiently clear and precise to give rise to an enforceable agreement to change the property line." Moreover, the Crostons' building of the fence and supplying of the materials was not consideration for any alleged agreement or contract. "To constitute consideration, a performance or a return promise must be bargained for. A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Boise Tower Assocs., LLC v. Hogland*, 147 Idaho 774, 780, 215 P.3d 494, 500 (2009) (quoting Restatement (Second) of Contracts § 71 (1981)). Here, there is no evidence the Fischers bargained for the Crostons' purchasing and building of a new fence on the survey line. In fact, the Fischers asked the Crostons *not* to build a fence on the survey line until the dispute could be resolved, yet the Crostons constructed a fence despite protestation by the Fischers. Because the purchasing and construction of the fence was not bargained for by the Fischers, it is not consideration for any alleged agreement.

In sum, the Crostons have not shown a genuine dispute of material fact sufficient to preclude summary judgment on this issue. As we have stated,

> we emphasize that the purpose of summary judgment proceedings is to eliminate the necessity of trial where facts are not in dispute and where existent and undisputed facts lead to a conclusion of law which is certain. If a party resists summary judgment, it is his responsibility to place in the record before the trial court the existence of controverted material facts which require resolution by trial. A party may not rely on his pleadings nor merely assert that there are some facts which might or will support his legal theory, but rather he must establish the existence of those facts by deposition, affidavit, or otherwise. Failure to so

10

establish the existence of controverted material facts exposes a party to the risk of a summary judgment.

*Berg*, 107 Idaho at 444, 690 P.2d at 899 (citations omitted).

Here, the Crostons needed to place in the record the controverted, material facts precluding summary judgment. They have failed to do so. The Crostons argue that there was an agreement between the parties that the survey line would control the new boundary line. While the parties do disagree on whether an agreement was ultimately formed to change the boundary line, the underlying facts surrounding the formation of the alleged agreement are not in dispute. The facts here, construed in the light most favorable to the Crostons, do not give rise to an enforceable agreement for multiple reasons. First, an oral agreement to move the boundary line would be invalid under the statute of frauds. Next, Jim had no authority to enter into a binding agreement on his parents' behalf, as Jim was neither a coterminous owner of the property nor an agent for his parents. And, even so, there was no specificity or consideration to support any alleged agreement or contract. To the extent the Crostons rely on stricken portions of Ms. Penning's affidavit as support for their arguments, we do not consider such evidence, as it was stricken below and that decision was not appealed. *See Foster*, 145 Idaho at 30 n. 2, 175 P.3d at 192 n. 2.

The Crostons have not established there are controverted, material facts that require resolution by a trial. *See Berg*, 107 Idaho at 444, 690 P.2d at 899. Because there was no binding agreement to change the boundary line between the parties, the true property line remains unchanged, and is that of the old fence line. *See Duff*, 110 Idaho at 867, 719 P.2d at 1127 (stating boundaries by agreement are "controlling even if that boundary varies from the boundary set forth in a written legal description."). There is no dispute as to the location of that line. -Accordingly, the district court's order granting summary judgment is affirmed.

**B.      The Crostons trespassed when they constructed a fence on the survey line.**

The Fischers argue that the Crostons trespassed when they constructed a fence on the survey line during the dispute. The Crostons concede they entered the disputed strip of land, but that such action was not trespass when the strip of land in dispute had not yet had title quieted to the Fischers. The record shows that while the dispute regarding the new fence line was ongoing, the Crostons, through their agent, Ms. Penning, crossed the old fence line and installed a fence on the survey line, which was on the Fischers' property. To do this, the Crostons passed "no trespassing" signs that the Fischers had placed on the old fence line. The district court found

11

entering the Fischers' land and constructing a fence constituted trespass pursuant to Idaho Code section 6-202 and *Weitz v. Green*, 148 Idaho 851, 863, 230 P.3d 743, 755 (2010). We affirm.[2]

Idaho Code section 6-202 provides,

> Any person who, without permission of the owner . . . willfully and intentionally enters upon the real property of another person which property is posted with "No Trespassing" signs or other notices of like meaning, spaced at intervals of not less than one (1) notice per six hundred sixty (660) feet along such real property . . . without lawful authority, is liable to the owner of such land . . . for treble the amount of damages which may be assessed therefor or fifty dollars ($50.00), plus a reasonable attorney's fee which shall be taxed as costs, in any civil action brought to enforce the terms of this act if the plaintiff prevails.

This Court, in *Weitz*, interpreted and applied this statute to a case with facts similar to the case here. In *Weitz*, owners of neighboring properties were in dispute as to ownership of land located along the common border of two adjacent properties. *Weitz*, 148 Idaho at 856, 230 P.3d at 748. During the dispute, one party entered the contested tract of land and built a fence in place of an existing dilapidated fence. *Id.* The disputed land was ultimately found to belong to the respondents. *Id.* at 863, 230 P.3d at 755. In determining whether the party had trespassed when it constructed the fence, we stated, "[w]hile the statute does not so state in terms, it is clear, we think, that it was not intended to apply to cases in which the trespass was committed through an innocent mistake as to the boundary or location of a tract of land claimed by the defendant." *Id.* at 863–64, 230 P.3d at 755–56 (quoting *Menasha Woodenware Co. v. Spokane Int'l Ry. Co.*, 19 Idaho 586, 593, 115 P. 22, 24 (1911)). However, we stated, when the appellants entered the tract of contested land and constructed the fence, they "were not committing an innocent mistake in re-entering the property, cutting down vegetation, and erecting a fence. They had notice from the [respondents] that the property was in dispute." *Id.* at 864, 230 P.3d at 756. This Court went on to say that it "strongly disfavors the resort to forceful self-help in resolving property disputes." *Id.* Ultimately, this Court determined the appellants acted willfully and intentionally, and were thus guilty of trespass and liable for treble damages under Idaho Code section 6-202. *Id.*

This case is similar to *Weitz*. Here, the tract of land between the old fence line and the platted boundary line as revealed by the survey was in dispute. The Crostons had notice of this

---

[2] While we affirm the district court on this issue, to the extent the district court in discussing the trespass issue lists a plural form of agents, agents as a plural is in error. As analyzed in Section A, *supra*, only Ms. Penning was an agent of the Crostons. Here, the record shows, and the Crostons concede, that Ms. Penning entered land that would belong to the Fischers based on the old fence line, and constructed a fence based on the survey results.

12

dispute, as the Fischers notified them of the discrepancy, asked them not to construct a fence until the dispute was resolved, and put up "no trespassing" signs on the old fence line. The Crostons did not wait for the dispute to be resolved, and instead finished constructing a fence on the survey line three days after receiving notice of the disputed line. Like in *Weitz*, the Crostons were not "committing an innocent mistake . . . erecting a fence" but instead "had notice from the [Fischers] that the property was in dispute." *Id.* Thus, like in *Weitz*, the Crostons committed trespass when their agent and daughter, Ms. Penning, constructed a fence on the survey line, as the old fence line was the true boundary, and the property on the survey line belonged to the Fischers. Accordingly, the district court's grant of summary judgment is affirmed.

## C. Attorney fees below and on appeal.

Following the entry of summary judgment, the Fischers submitted an affidavit and memorandum of attorney fees and costs, to which the Crostons objected. The district court declined to award attorney fees to the Fischers under Idaho Code section 12-121, but did award attorney fees under Section 6-202, which provides for recovery of attorney fees in a trespass action. The district court limited the award of attorney fees to the trespass issue, noting the primary claim was to quiet title, and the trespass claim was only incidental to the primary claim.[3] We affirm the district court's grant of attorney fees to the Fischers for trespass under Section 6-202.

Idaho Code section 6-202 provides for a reasonable attorney fee for prevailing plaintiffs in a trespass action. As this Court has stated,

> A trial court is authorized to award attorney fees only as provided by statute or contract. I.R.C.P. 54(e)(1). Under I.C. § 6-202, where a defendant willfully and intentionally trespasses on properly posted real property, that defendant is liable to the property owner "for treble the amount of damages . . . plus a reasonable attorney's fee which shall be taxed as costs, in any civil action brought to enforce the terms of this act if the plaintiff prevails." The plain language of I.C. § 6-202 "mandates the award of a reasonable attorney fee to a plaintiff who prevails in an action brought under the statute." *Bubak v. Evans*, 117 Idaho 510, 513, 788 P.2d 1333, 1336 (Ct. App. 1989). Therefore, under I.C. § 6-202, a prevailing plaintiff may only be awarded attorney fees "reasonably incurred in prosecuting the trespass action upon which he prevailed."

---

[3] The Fischers requested $31,131 in attorney fees and $684 in costs. However, because the district court limited the award to the amount spent litigating the trespass action, the Fischers were awarded only $266 in costs and $2,670.40 in attorney fees.

*Akers v. Mortensen*, 156 Idaho 27, 36, 320 P.3d 418, 427 (2014). However, Section 6-202 only provides an attorney fee for "fees incurred in prosecuting the trespass action" and as such the district court must apportion its award of attorney fees. *Id.* Here, the Fischers are entitled to a reasonable attorney fee for prosecuting the trespass action. Accordingly, the district court's grant of attorney fees for the trespass portion of the Fischers' claim is affirmed.

Next, the Fischers request attorney fees on appeal. In *Weitz*, this Court held that because Section 6-202 was applicable to the trespass issue in the case, the prevailing party on appeal was entitled to attorney fees on appeal under Section 6-202. 148 Idaho at 868, 230 P.3d at 760. Similarly here, because Section 6-202 is applicable in this case, the Fischers are entitled to attorney fees on appeal as apportioned to the trespass action. "Where the district court's award of attorney fees pursuant to section 6-202 was challenged on appeal and upheld, we will also award a prevailing plaintiff attorney fees on appeal pursuant to that statute." *Mueller v. Hill*, 158 Idaho 208, 218, 345 P.3d 998, 1008 (2015). In this case, we grant the Fischers' request for attorney fees under Section 6-202 on appeal, as apportioned to time spent appealing the trespass issue. We decline to award attorney fees under Section 12-121.

## V. CONCLUSION

We affirm the district court's grant of summary judgement quieting title to the disputed tract of land to the Fischers. Additionally, we affirm the district court's award of attorney fees pursuant to Section 6-202. On appeal, we award attorney fees under Section 6-202 apportioned to the fees incurred as to the trespass issue. Costs on appeal to the Fischers.

Justices BRODY, BEVAN and Justices Pro Tem LORELLO and BUTLER CONCUR.

14